RODRIGUEZ ET AL. *v.* POPULAR DEMOCRATIC
PARTY ET AL.

No. 81-328.   Argued March 22, 1982—Decided June 7, 1982

2

BURGER, C. J., delivered the opinion for a unanimous Court.

*Phillip A. Lacovara* argued the cause for appellants. With him on the briefs were *Gerald Goldman* and *William R. Stein.*

*Abe Fortas* argued the cause for appellees. With him on the briefs was *Rafael Hernandez-Colon.*

CHIEF JUSTICE BURGER delivered the opinion of the Court.

The question presented by this appeal is whether Puerto Rico may by statute vest in a political party the power to fill an interim vacancy in the Puerto Rico Legislature. The Supreme Court of Puerto Rico held that such a procedure did not violate the United States Constitution. We noted probable jurisdiction, 454 U. S. 938 (1981), and we affirm.

I

In the November 4, 1980, Puerto Rico general election, Ramon Muniz, a member of appellee Popular Democratic Party, was elected to the Puerto Rico House of Representatives from District 31.[1] Muniz died on January 28, 1981. The Governor of Puerto Rico, a member of the opposition New Progressive Party, subsequently called for a "by-election"—open to all qualified voters in District 31—to fill the vacancy caused by Muniz' death. The Governor purported to act pursuant to Articles 5.006 and 5.007 of the Electoral Law of Puerto Rico, P. R. Laws Ann., Tit. 16, §§ 3206, 3207 (Supp. 1980).[2]

---

[1] The Puerto Rico Legislative Assembly consists of two chambers—the House of Representatives, with 51 members, and the Senate, with 27 members. P. R. Const., Art. III, §§ 1 and 2. A single general election is held in Puerto Rico every four years for all elective officials. Art. VI, § 4; P. R. Laws Ann., Tit. 16, §§ 3201, 3205 (Supp. 1980).

[2] Article 5.006 provides, in pertinent part:

"When a vacancy occurs in the office of a senator or representative

4

On March 3, 1981, the Popular Democratic Party instituted this action in the Superior Court of Puerto Rico, alleging that Articles 5.006 and 5.007 authorized only candidates and electors affiliated with the Party to participate in the by-election. Appellants, 10 qualified electors in District 31 who are not affiliated with the Popular Democratic Party, intervened as defendants. On March 20, 1981, the Superior Court entered judgment for the Popular Democratic Party; it ordered the Governor and General Administrator of Elections to limit participation in the by-election to Party members. App. to Juris. Statement 36a.

A divided Supreme Court of Puerto Rico modified the Superior Court's judgment. It interpreted Articles 5.006 and 5.007 to require a by-election only in the event that the party of the legislator vacating the seat fails to designate a replacement within 60 days after the vacancy occurred; if the party selects a single candidate within the 60-day period, that candidate is "automatically elected to fill the vacancy," rendering a by-election unnecessary. *Popular Democratic Party* v. *Barcelo,* —— P. R. R. ——, —— (1981). The court held further that if the party presents more than one candidate during the 60-day period, a by-election must be conducted in

---

elected as an independent candidate for a district, or when a vacancy occurs in the office of a senator or representative for a district, nominated by a party before the fifteen (15) months immediately preceding the date of the following general election, the Governor, with the advice of the [Commonwealth Election] Commission shall, within the thirty (30) days following the date on which the vacancy occurred, call a by-election in such district which shall be held no later than ninety (90) days after the date of the call, and the person elected in such by-election shall hold the office until the term of his predecessor has expired.

"If within sixty (60) days following the date such vacancy arises, the party to which the legislator of the vacant office belonged has not presented a candidate to fill such office, the office shall be deemed to be that of an independent legislator, to the effects of holding the by-election to fill it."

Article 5.007 provides:

"All electors entitled to vote within the geographic district in which the by-election is to be held, pursuant to the call issued by the Governor to such effect, shall vote in a by-election."

which only party-affiliated candidates may run but in which all qualified electors may vote. In the event no candidate is presented within the 60-day period, candidates affiliated with any party, as well as independent candidates, are permitted to run in the by-election. Because of the delay already occasioned by the litigation, the court permitted appellee Party only 30 days from the entry of judgment, May 8, 1981, to present a "slate" of candidates to the Commonwealth Election Commission. The court ordered that "[i]f said slate is limited to only one candidate, he shall be certified by the General Administrator of Elections as the person entitled to hold the vacant seat." *Id.*, at ——.[3]

The court rejected appellants' contention that this procedure violated the United States Constitution. It noted that the Constitution does not expressly require a fixed method for filling vacancies in a state or commonwealth legislature. The court also held that Puerto Rico's party appointment system serves several "compelling interests," such as ensuring the stability and continuity of the "legislative balance" until the next general election; protecting the "electoral mandate" of the previous election; and reducing "inter-partisan political campaigns to once every four years." *Id.*, at ——.

## II

Puerto Rico, in common with many of the States, has adopted means of filling interim vacancies in elective commonwealth offices without the necessity of a full-scale special election.[4] If a vacancy occurs in the office of Governor, it is

---

[3] On March 22, 1981, while the case was pending before the Supreme Court of Puerto Rico, the Popular Democratic Party held a primary election in which only its members were permitted to participate. From a field of four candidates, the Party's members selected Juan Corujo Collazo. Pursuant to the Supreme Court's mandate, Corujo Collazo's name was presented to the Election Commission, and on July 6, 1981, he was sworn in as the new Representative from District 31.

[4] In 22 States, legislative vacancies are filled by appointment, with the appointee serving either until the next general election or until expiration of the term of the previous incumbent. Alaska Stat. Ann. § 15.40.320 *et*

automatically filled by the Secretary of State, an officer appointed by the Governor. P. R. Const., Art. IV, § 7. Mayoral vacancies and vacancies in the municipal assemblies are filled by appointment upon the recommendation of the political party to which the incumbent belonged. P. R. Laws Ann., Tit. 21, §§ 1161, 1259 (1974). Similarly, the Commonwealth Constitution provides that vacancies in the posts of at-large senators and representatives, see n. 13, *infra*, shall be filled "upon recommendation of the political party to which belonged the Senator or Representative causing the vacancy . . . ." Art. III, § 8. Article 5.006 of the Puerto Rico Electoral Law, as interpreted by the Supreme Court of Puerto Rico in this case, likewise confers on a political party the initial opportunity to appoint an interim replacement for one of its members who vacates a position as a district sena-

---

*seq.* (1975) (unless term expires or election held before next legislative session convenes); Colo. Rev. Stat. § 1–12–103 (1980); Haw. Rev. Stat. §§ 17–3, 17–4 (1976 and Supp. 1981); Idaho Code § 59–904A (1976); Ill. Rev. Stat., ch. 46, ¶ 25–6 (1980); Ind. Code § 2–2.1–2–1 *et seq.* (Cum. Supp. 1981); Kan. Stat. Ann. § 25–312 (1981); Md. Const., Art. III, § 13; Mont. Code Ann. § 5–2–401 *et seq.* (1981); Neb. Rev. Stat. § 32–1042(3) (1978); Nev. Const., Art. IV, § 12 (unless biennial or regular election held between time of vacancy and next legislative session); N. M. Stat. Ann. §§ 2–7–9B, 2–8–9B (1978); N. C. Gen. Stat. § 163–11 (Cum. Supp. 1981); Ohio Const., Art. II, § 11; Ore. Rev. Stat. §§ 171.051, 171.060 (1981) (unless the legislature is not in session; a general election will be held within 90 days; and no special session of the legislature will be convened before such election); S. D. Const., Art. III, § 10; Tenn. Code Ann. § 2–14–201 *et seq.* (1979) (if less than 12 months remain before next general election); Utah Code Ann. § 20–1–5 (Supp. 1981); Vt. Stat. Ann., Tit. 17, § 2623 (Supp. 1981); Wash. Const., Amdt. 52, Art. 2, § 15; W. Va. Code § 3–10–5 (1979); Wyo. Stat. §§ 22–18–111(a)(ii), (iii) (1977). Like Puerto Rico, five of these States— Colorado, Illinois, Indiana, Maryland, and North Carolina—confer the appointment power on the political party to which the previous incumbent belonged. Nine more States—Alaska, Idaho, Montana, Ohio, Oregon, Utah, Washington, West Virginia, and Wyoming—require that the appointee be selected from a list submitted by the political party, or that the appointee be chosen or confirmed by elected officials affiliated with the party. Another two States—Hawaii and Nevada—simply require that the appointee be a member of the party to which his or her predecessor belonged.

tor or representative. In each case, the appointee serves only until the next regularly scheduled election.[5]

Appellants' challenge to the procedure mandated by Article 5.006 is essentially two-pronged. Appellants first contend that qualified voters have a federal constitutional right to elect their representatives to the Puerto Rico Legislature, and that vacancies in legislative offices therefore must be filled by a special election open to all qualified electors, not by interim appointment of any kind. Alternatively, appellants maintain that even if legislative vacancies may be filled by an interim appointment of the Governor or some other elected official, Puerto Rico's party appointment mechanism impermissibly infringes upon their right of association under the First Amendment and denies them equal protection of the laws.

## A

It is not disputed that the fundamental protections of the United States Constitution extend to the inhabitants of Puerto Rico. See *Torres* v. *Puerto Rico*, 442 U. S. 465, 469–470 (1979). Cf. *Dorr* v. *United States*, 195 U. S. 138, 148 (1904). In particular, we have held that Puerto Rico is subject to the constitutional guarantees of due process and equal protection of the laws. *Examining Board* v. *Flores de Otero*, 426 U. S. 572, 599–601 (1976); *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U. S. 663 (1974).[6] We thus think

---

[5] The current procedure for filling legislative vacancies is similar to that prescribed by a 1938 amendment to Puerto Rico's Organic Act, which remained in effect until Puerto Rico assumed Commonwealth status in 1952. In the 1938 amendment, Congress mandated that vacancies in the Puerto Rico Legislature be filled by the Governor "upon the recommendation of the central committee of the political party of which such senator or representative was a member." Act of June 1, 1938, ch. 308, § 30, 52 Stat. 595. Title 48 U. S. C. §§ 891, 892 presently provide that vacancies in the elective office of Resident Commissioner to the United States are to be filled by appointment of the Governor with the advice and consent of the Puerto Rico Senate.

[6] We have never found it necessary to resolve the precise question whether the guarantee of equal protection is provided to Puerto Ricans

8

it is clear that the voting rights of Puerto Rico citizens are constitutionally protected to the same extent as those of all other citizens of the United States.

At the same time, Puerto Rico, like a state, is an autonomous political entity, "'sovereign over matters not ruled by the Constitution.'" *Calero-Toledo, supra,* at 673 (quoting *Mora* v. *Mejias,* 115 F. Supp. 610 (PR 1953)). See *Cordova & Simonpietri Ins. Agency Inc.* v. *Chase Manhattan Bank,* 649 F. 2d 36, 39–42 (CA1 1981). The methods by which the people of Puerto Rico and their representatives have chosen to structure the Commonwealth's electoral system are entitled to substantial deference. Moreover, we should accord weight to the Puerto Rico Supreme Court's assessment of the justification and need for particular provisions to fill vacancies caused by the death, resignation, or removal of a member of the legislature. Bearing these considerations in mind, we turn to appellants' constitutional challenges.

## B

No provision of the Federal Constitution expressly mandates the procedures that a state or the Commonwealth of Puerto Rico must follow in filling vacancies in its own legislature. Cf. U. S. Const., Art. I, § 2; Amdt. 17, cl. 2.[7] Appellants nevertheless maintain that qualified electors have an

---

under the Equal Protection Clause of the Fourteenth Amendment or the Due Process Clause of the Fifth Amendment. See *Examining Board* v. *Flores de Otero,* 426 U. S., at 601.

[7] With regard to Members of the United States House of Representatives, Art. I, § 2, cl. 4, provides:

"When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies."

The Seventeenth Amendment provides:

"When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: *Provided,* That the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct."

absolute constitutional right to vote for the members of a state or commonwealth legislature, even when a special election is required for this purpose.[8]   However, this Court has often noted that the Constitution "does not confer the right of suffrage upon any one," *Minor* v. *Happersett*, 21 Wall. 162, 178 (1875), and that "the right to vote, *per se*, is not a constitutionally protected right," *San Antonio Independent School Dist.* v. *Rodriguez*, 411 U. S. 1, 35, n. 78 (1973).   See *McPherson* v. *Blacker*, 146 U. S. 1, 38–39 (1892).   Moreover, we have previously rejected claims that the Constitution compels a fixed method of choosing state or local officers or representatives.

For example, in *Fortson* v. *Morris*, 385 U. S. 231, 234 (1966), Justice Black, speaking for the Court, stated:

> "There is no provision of the United States Constitution or any of its amendments which either expressly or impliedly dictates the method a State must use to select its Governor."

In *Fortson*, the Court sustained a Georgia constitutional provision empowering the state legislature to elect a Governor from the two candidates receiving the highest number of votes cast in the general election, in the event neither received a majority.   Similarly, in *Sailors* v. *Board of Education*, 387 U. S. 105 (1967), the Court upheld a statute au-

---

[8] The source of this purported right is somewhat unclear.   Appellants contend that Art. I, § 2, cl. 1, of the Constitution—which provides that those eligible to vote for Members of the United States House of Representatives "shall have the Qualifications requisite for the Electors of the most numerous Branch of the State Legislature"—contemplates that state legislators will be popularly elected.   See also U. S. Const., Amdt. 17. Moreover, appellants contend that a popularly elected legislature is an essential element of a "Republican Form of Government," U. S. Const., Art. IV, § 4.   See 48 U. S. C. § 731c, requiring Puerto Rico to provide a republican form of government.   However, this seems largely irrelevant, since Puerto Rico has in fact established a legislature "whose members shall be elected by direct vote at each general election," P. R. Const., Art. III, § 1. See also Art. II, § 2, guaranteeing "equal, direct, and . . . universal suffrage . . . ."

thorizing appointment rather than election of the members of a county school board.[9]

To be sure, when a state or the Commonwealth of Puerto Rico has provided that its representatives be elected, "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn* v. *Blumstein*, 405 U. S. 330, 336 (1972). See *Kramer* v. *Union Free School District*, 395 U. S. 621, 626–629 (1969); *Gray* v. *Sanders*, 372 U. S. 368, 379–380 (1963). However, the Puerto Rico statute at issue here does not restrict access to the electoral process or afford unequal treatment to different classes of voters or political parties. All qualified voters have an equal opportunity to select a district representative in the general election; and the interim appointment provision applies uniformly to all legislative vacancies, whenever they arise.[10]

In *Valenti* v. *Rockefeller*, 393 U. S. 405 (1969), the Court sustained the authority of the Governor of New York to fill a

---

[9] In *Sailors*, we expressly left open the question "whether a State may constitute a local *legislative* body through the appointive rather than the elective process." 387 U. S., at 109–110 (emphasis added). However, we need not consider whether, as urged by appellants, a state or the Commonwealth of Puerto Rico is constitutionally barred from abolishing its elected legislative branch of government; that question is not presented. See n. 8, *supra*.

[10] Appellants contend that Article 5.006 "discriminates" between voters in districts in which a vacancy occurs and those in which the elected representative or senator serves out his term, because only the former are denied the opportunity to be represented by an elected legislator. Obviously, a statute designed to deal with the occasional problem of legislative vacancies will affect only those districts in which vacancies actually arise. However, such a statute is not for this reason rendered invalid under equal protection principles. A vacancy in the legislature is an unexpected, unpredictable event, and a statute providing that all such vacancies be filled by appointment does not have a special impact on any discrete group of voters or candidates. Cf. *Bullock* v. *Carter*, 405 U. S. 134 (1972); *Williams* v. *Rhodes*, 393 U. S. 23 (1968). Appellants' equal protection argument adds nothing to their basic assertion of an absolute constitutional right to elect representatives to a state or commonwealth legislature.

vacancy in the United States Senate by appointment pending the next regularly scheduled congressional election—in that case, a period of over 29 months.[11] Thus, although most Members of the United States Senate hold office by virtue of popular election, some Members, at any given time, may hold office by virtue of an interim appointment. The Court found nothing invidious or arbitrary in this distinction in *Valenti*, nor do we here. As the three-judge District Court observed in *Valenti:*

> "In this case we are confronted with no fundamental imperfection in the functioning of democracy. No political party or portion of the state's citizens can claim it is permanently disadvantaged . . . or that it lacks effective means of securing legislative reform if the statute is regarded as unsatisfactory. We have, rather, only the unusual, temporary, and unfortunate combination of a tragic event and a reasonable statutory scheme." *Valenti* v. *Rockefeller*, 292 F. Supp. 851, 867 (SDNY 1968).

*Valenti*, of course, unlike this case, involved an interpretation of the Seventeenth Amendment, which explicitly outlines the procedures for filling vacancies in the United States Senate. See n. 7, *supra*. However, the fact that the Seventeenth Amendment permits a state, if it chooses, to forgo a special election in favor of a temporary appointment to the United States Senate suggests that a state is not constitutionally prohibited from exercising similar latitude with regard to vacancies in its own legislature. We discern nothing in the Federal Constitution that imposes greater constraints on the Commonwealth of Puerto Rico.

---

[11] In *Valenti*, the vacancy was created by the death of Senator Robert F. Kennedy on June 6, 1968. Under New York law, since the vacancy arose less than 60 days prior to New York's regular spring primary in an even-numbered year, an election to fill the vacancy would not be held until the general election in the next even-numbered year, *i. e.*, November 1970. The Governor was empowered to make an interim appointment, effective until December 1, 1970. See *Valenti* v. *Rockefeller*, 292 F. Supp. 851, 853 (SDNY 1968) (three-judge District Court).

The Commonwealth's choice to fill legislative vacancies by appointment rather than by a full-scale special election may have some effect on the right of its citizens to elect the members of the Puerto Rico Legislature; however, the effect is minimal, and like that in *Valenti*, it does not fall disproportionately on any discrete group of voters, candidates, or political parties. See n. 10, *supra*. Moreover, the interim appointment system plainly serves the legitimate purpose of ensuring that vacancies are filled promptly, without the necessity of the expense and inconvenience of a special election. The Constitution does not preclude this practical and widely accepted means of addressing an infrequent problem.

## C

Puerto Rico's appointment mechanism is not rendered constitutionally defective by virtue of the fact that the interim appointment power is given to the political party with which the previous incumbent was affiliated. Appellants maintain that the power to make interim appointments must be vested in an elected official, such as the Governor of the Commonwealth, so that the appointments will have "the legitimacy of derivative voter approval and control." Reply Brief for Appellants 15. However, that such control may often be largely illusory is illustrated by this case, where the Governor and the incumbent belonged to different parties. The Puerto Rico Legislature could reasonably conclude that appointment by the previous incumbent's political party would more fairly reflect the will of the voters than appointment by the Governor or some other elected official.[12]

---

[12] See *Garcia* v. *Barcelo*, 671 F. 2d 1, 6 (CA1 1982):

"One might argue, as a matter of form, that appointment by a governor is indeed more 'democratic' because the governor is himself elected. Yet in practice this is not likely to be so when the governor and former representative are of different parties. In that case the party difference is likely to produce successors of different parties. In such circumstances, we see how the framers of a state constitution might conclude that party selection is more likely to reflect the will of the voters than selection by the

The Supreme Court of Puerto Rico held that party appointment was a legitimate mechanism serving to protect the mandate of the preceding election and to preserve the "legislative balance" until the next general election is held. Such protection is particularly important in light of Puerto Rico's special interest in ensuring minority representation in its legislature.[13] See *Garcia* v. *Barcelo*, 671 F. 2d 1, 6–7 (CA1 1982). It was thus not unreasonable for the Puerto Rico Legislature, in establishing an appointment system for filling legislative vacancies, to make provision for continuity of party representation. Cf. *Kaelin* v. *Warden*, 334 F. Supp. 602, 607–608 (ED Pa. 1971) (three-judge District Court).[14] Absent some clear constitutional limitation, Puerto Rico is free

---

governor, for it was the former representative's party, not that of the governor, that won the prior seat. Such a judgment, reflecting a knowledge of political practice, seems perfectly consistent with the basic democratic role of the modern political party—translating the individual wills of myriad voters into a practically achievable program administered by a government that can be held responsible for its performance at the polls."

[13] Two devices in Puerto Rico's Constitution ensure representation of minority parties in the Puerto Rico Legislative Assembly. First, 11 of 27 senators and 11 of 51 representatives are elected "at-large," and each voter may vote for only one candidate for senator or representative at-large. Art. III, § 3. Second, if any one party elects more than two-thirds of the members of either house of the legislature, the number of members in that house is increased by declaring elected a sufficient number of minority-party candidates to bring the total number of minority-party members to 9 in the Senate and to 17 in the House. Art. III, § 7. Appellees maintain that "the Commonwealth's unique guarantee of minority party representation . . . is and has been particularly important in Puerto Rico, far beyond its importance in any State of the Union, in order to provide a democratic forum and an outlet for the radically different views of the various political parties as to the ultimate status of Puerto Rico . . . ." Brief for Appellees 14.

[14] Puerto Rico is in no sense unique in maintaining continuity of party representation between elections; 16 States have chosen to require that legislative vacancies be filled by appointment of a person affiliated with the same party as the previous incumbent, or by designation of that party, see n. 4, *supra*.

14

to structure its political system to meet its "special concerns and political circumstances," *Garcia, supra,* at 7.

Finally, appellants argue that their rights of association and equal protection of the laws were violated by their exclusion, based solely upon their party affiliation, from the Party-sponsored election held to select Muniz' successor, see n. 3, *supra.* Cf. *Branti* v. *Finkel,* 445 U. S. 507 (1980). However, appellants' argument misconceives the nature of the election held in this case. Puerto Rico law authorized the Popular Democratic Party to designate an interim replacement to fill Muniz' seat. The Party was entitled to adopt its own procedures to select this replacement; it was not required to include nonmembers in what can be analogized to a party primary election. Cf. *Democratic Party of U. S.* v. *Wisconsin,* 450 U. S. 107 (1981); *Cousins* v. *Wigoda,* 419 U. S. 477 (1975). Appellants' exclusion from this election did not violate their rights of association, nor did it deprive them of equal protection of the laws.

### III

We hold that the mechanism adopted by the Puerto Rico Legislature for filling legislative vacancies is not foreclosed by the Federal Constitution. Accordingly, the judgment of the Supreme Court of Puerto Rico is

*Affirmed.*