Judah SHAPIRO, Louis Weinstein, Ira Lichtiger and Annette Fisch, Plaintiffs,

v.

Suzanne BERGER, individually, and as a chair of the Greenburgh Democratic Town Committee, et al. Eddie Mae Barnes, individually, as Councilman and a Member of Greenburgh Town Board, Diana Juettner, individually, and as Councilwoman and a member of the Greenburgh Town Board, Timmy Weinberg, individually, and as Councilman and member of the Greenburgh Town Board, Alfreda Williams, individually and as Greenburgh Town Clerk, James Hubert, individually, the Town of Greenburgh and Westchester County Board of Elections, Defendants.

No. 04 CIV. 5895(CM).

United States District Court, S.D. New York.

Aug. 5, 2004.

Guy T. Parisi, Parisi & Patti LLP, White Plains, NY, for Plaintiffs.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF

MCMAHON, District Judge.

On August 5, 2004, Plaintiffs Judah Shapiro ("Shapiro"), Louis Weinstein ("Weinstein"), Ira Lichtiger ("Lichtiger"), and Annette Fisch ("Fisch") filed an Order to Show Cause with this Court seeking an injunction to force the Town of Greenburgh ("Greenburgh") to hold a primary election to select the Democratic Party's nominee for a newly created judicial vacancy. Plaintiffs argued that Defendants Suzanne Berger ("Berger"), the Chair of the Greenburgh Democratic Town Committee, and the Greenburgh Town Board (the "Town Board") conspired to prevent the town from holding—and, more specifically, to prevent Shapiro from running in—a primary election against their preferred can-

didate for the position, one James Hubert. Plaintiffs alleged that this deprived Shapiro, the voters in the Town of Greenburgh and the rank-and-file members of the Democratic Party of their constitutional rights to ballot access and to vote, as guaranteed by the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

I signed the Order, set a briefing schedule, and scheduled oral arguments for 9:00 A.M. on Thursday, August 5, 2004. At that time, Plaintiffs voluntarily dismissed Berger and Hubert as defendants.

In their memoranda and accompanying affidavits, Plaintiffs set out the following facts:

*The Creation of the Additional Judicial Position*

On April 14, 2004, the Greenburgh Town Board passed a resolution urging the State Legislature to adopt a special law to allow the town to create a third Town Justice position, and to hold an election for the Third Justice in November 2004.

On May 26, 2004, the Greenburgh Town Board adopted a home rule request formally asking the New York State Legislature to pass the law.

Both houses of the State Legislature subsequently passed identical bills (A.11188/S.7282–A) authorizing the Town Board to adopt a resolution creating the new post.

On June 30, 2004, Governor Pataki signed the bill into law. The law "Authorizes the board of the town of Greenburgh, Westchester County to provide by resolution, adopted at least 90 days prior to the general election, for the election of an additional town justice in November 2004, to serve for four years." The general election in Greenburgh is scheduled for November 2, 2004. Thus, the Town Board was authorized to create the position anytime between June 30, 2004 (the date New York authorized the Board to act) and August 4, 2004 (90 days before the general election).

At its regularly scheduled meeting on July 14, 2004—two weeks after the bill was signed into law, and well before the August 4 deadline—the Town Board approved a resolution providing for the election of an additional Town Justice for the Town of Greenburgh.

*The Actions of Suzanne Berger*

On June 3, 2004, the Greenburgh Town Democratic Committee (the "GDC") held a "convention," during which it voted to endorse candidates for New York State Senate, New York State Assembly and for Democratic State Committee. The GDC is a subcommittee under the Election Law of the Westchester County Democratic Committee. (Affidavit of Suzanne Berger at 24). Also during that meeting, Suzanne Berger, Chair of the GDC and member of the Westchester County Democratic Committee, "called for nominations with respect to the endorsement of candidates for the anticipated Town Judge position." (*Id.* at 29.) After some discussion, the Committee voted to table the endorsement until such time as the anticipated Town Judge position was formally created. (*Id.*).

On June 9, 2004, Ms. Berger sent a "save the date" email to all District Leaders, rescheduling the date of the regular monthly meeting of the GDC Executive Committee from June 24, 2004, to June 21, 2004. The email notice also stated, in relevant part,

I have invited [judicial candidates] Mr. Hubert and Mr. Lewis to the meeting and will invite any and all additional interested judicial candidates. In the event that a Third Justice position has been created by June 21, 2004, each candidate will have an opportunity to present his or her credentials and re-

spond to questions from any District Leader ... As I anticipate that if the position is created by June 21, petitions will be due in mid-July, there will be no time to call a convention and still collect signatures after such a convention. If the Greenburgh Democratic Committee wants to endorse, that will occur at the Executive Committee meeting by a vote of the members of the Executive Committee ... *To be clear, if the position is not created by June 21, there will be no action at the June 21 meeting.*

(Plf.'s Ex. 1) (Emphasis added).

On June 21, 2004, the new position had not yet been created. Nonetheless, the GDC Executive Committee meeting heard four candidates, including Shapiro, provide brief presentations in support of their candidacies for the judicial vacancy. Following their presentations, a motion was made (apparently not by Berger) and seconded that the Executive Committee endorse one of the four candidates. There was an extended discussion of whether such a motion would be proper in light of the motion on June 3 made by the full committee to table any endorsement until a position was created. Berger, as Chair, ruled the motion proper, and the committee (comprised of 18 voting members) voted as follows: 11 for Hubert, 1 for Shapiro, and 4 abstentions (including Berger).

On the morning of June 27, 2004, Shapiro sent an email to Berger, asking her to explain why the Executive Committee voted to endorse, despite her "prior unambiguous statements"—i.e. the statement in her June 9, 2004 notice email that "there will be no action at the June 21 meeting." Berger responded, in a email sent to Shapiro later that morning, that the June 9 email stated only that "I would not call for a motion, and I did not. Any member of the Committee is free to make a motion (just as at the June 3 convention)." (Plf.'s Ex. D). She wrote further, "Please consider seriously whether it is in the best interests of the town to force a primary for this position." (*Id.*)

*The Town Board and Shapiro's Petitions*

■ Section 6–108 of the New York Election Law, entitled "Party nominations; towns," provides,

In any town in a county having a population of over seven hundred fifty thousand inhabitants, as shown by the latest federal decennial or special population census, party nominations of candidates for town offices shall be made at the primary preceding the election.

N.Y. Elec. Law § 6–108. The Court takes judicial notice that Westchester County has a population greater than 750,000. Because Greenburgh is a town within Westchester County, party nominations for any Greenburgh office ordinarily must be made through a primary election.

■ However, where the election is to fill a vacancy for an office that must be filled by the next general election, which vacancy comes into being too late for a primary, § 6–116 of the New York Election Law controls. Section 6–116, entitled "Party nominations; election to fill a vacancy," provides,

A party nomination of a candidate for election to fill a vacancy in an elective office required to be filled at the next general election, occurring after seven days before the last day for circulating designating petitions or after the holding of the meeting or convention to nominate or designate candidates for such, shall be made, after the day of the primary election, by a majority vote of a quorum of the state committee if the vacancy occurs in an office to be filled by all voters of the state, and otherwise by a majority vote of a quorum of the members of a county committee or committees last elected in the political subdivision in which such vacancy is to be

filled, or by a majority of such other committee as the rules of the party may provide.

N.Y. Elec. Law § 6–116. Thus, under § 6–116, party nominations to fill vacancies created within seven days of the last date for circulating designating petitions must be made by party committees after the September 14, 2004, primary election. This is an exception to the general rule.

In this case, the deadline for circulating petitions for the September 14 primary was July 15, 2004. Therefore, under New York State law, no primary could be held for the new judicial post unless the Town Board adopted the resolution creating the vacancy at least seven days prior to July 15, 2004 (the petition due date)—i.e., by July 8, 2004.

Plaintiffs allege that, on June 24 and June 25, 2004, Town Clerk Alfreda Williams informed Plaintiff Shapiro that a special meeting of the Board would be called for July 6, 2004 to establish the new judicial position. At that time, the governor had not signed the authorizing legislation.

Plaintiffs also allege that Defendant Feiner, the only member of the Town Board who is not a member of the GDC, was prepared to call a special meeting of the Board, but that other Town Board members told him that they would not attend a special meeting. This would have left the Board without a quorum.

On June 29, 2004, Defendant Williams advised Plaintiff Shapiro that no meeting was scheduled, and no meeting would be scheduled until the Governor signed the legislation authorizing the Town Board to adopt a resolution creating the new post.

On July 3, 2004, Plaintiff Shapiro wrote to the members of the Town Board, asking that the Board immediately call a Special Board meeting to establish the authorized position. (Plf.'s Ex. L).

On July 7, 2004, Susan Mancuso, the town attorney, wrote the following letter in response to Shapiro's letter,

Dear Mr. Shapiro:

This letter is in response to your July 2, 2004 letter to Paul Feiner, Supervisor, Alfreda Williams, Town Clerk and members of the Town Council. I have reviewed your legal authority with respect to your position presented therein and do not find that the Town Board's actions are in any fashion inconsistent with the propositions cited in *Yevoli v. Cristenfield.*

I believe I speak for all members of the Town Board in expressing appreciation for your interest in becoming a public servant for the Town of Greenburgh and assure you that the Town is attempting to fill the third town justice position in a manner that best exemplifies the democratic process.

Should you have any further questions, please feel free to contact me.

Very truly yours,

/s/

Susan Mancuso

Town Attorney

(Plf.'s Ex. L).

As noted above, the Town Board did not convene a special meeting on or prior to July 8, and did not pass a resolution establishing the position until July 14, 2004, the date of their regularly scheduled meeting.

On July 15, 2004, the last day Plaintiff Shapiro was entitled to file his petitions for placement on the primary ballot (scheduled for September 14, 2004) under New York Election Law, Plaintiff Shapiro filed a petition for his candidacy with the Westchester County Board of Elections.

On July 20, 2004, the Westchester County Board of Elections sent Mr. Shapiro the following letter,

Dear Mr. Shapiro:

We are in receipt of the petition you filed with this Board on July 15, 2004 for the position of Greenburgh Town Justice.

Unfortunately, this Board has no other recourse but to deem your petition invalid in accordance with Section 6–116 of the New York State Election Law.

This Board is aware of the State Legislation, A. 11188/S.7282–A, which was signed by Governor Pataki authorizing the Town of Greenburgh to pass a resolution for the election of an additional Town Justice in November 2004.

Furthermore, this Board has been notified by the Greenburgh Town Clerk of a resolution passed on July 14, 2004, which creates the new position of Town Justice. As such, the resolution date shall serve as the official creation for this new post.

Because the creation of the position falls within seven (7) days of the deadline for filing designating petitions, Section 6–116 of the Election Law shall apply. As dictated by this section of the law, a vacancy for elective office occurring after seven (7) days before the last day for circulating designating petitions shall be made by a majority vote of a quorum of a county committee or committees last elected in the political subdivision where such vacancy is to be filled. This meeting shall take place after the Primary Election. Enclosed, please find a copy of this section of the New York State Election law.

Again, according to guidelines promulgated by the New York State Election Law, this Board has unanimously deemed your petition for Greenburgh Justice invalid.

Sincerely,

Carolee Sunderland, Commissioner
Reginald Lafayette, Commissioner

Plf.'s Ex. 4.

As a result of the foregoing, Plaintiffs now allege that at least one member of the Town Board conspired with Berger to delay action by the Town Board on the resolution past July 8, 2004, thereby depriving Plaintiffs of the opportunity to fill the vacancy by primary election.

## DISCUSSION

Because Plaintiffs seek an order directing the Westchester County Board of Elections to conduct a Democratic primary to nominate candidates for the office of Town Justice in the Town of Greenburgh, I will consider Plaintiffs' motion to be in the nature of a motion for a preliminary injunction.

## I. Standard for a Preliminary Injunction

In this Circuit, a preliminary injunction will be granted if the moving party shows that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of its claim; or (2) that there are sufficiently serious questions going to the merits to make them fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party. *Wright v. Giuliani,* 230 F.3d 543, 547 (2d Cir.2000); *Fun–Damental Too, Ltd. v. Gemmy Industries Corp.,* 111 F.3d 993, 998–99 (2d Cir.1997). When a moving party seeks an injunction that will affect government action, however, the more rigorous showing of likelihood of success on the merits is required. *Beal v. Stern,* 184 F.3d 117, 122 (2d Cir.1999). In addition, where the injunction sought will " 'alter, rather than maintain, the status quo'—that is, where the injunction is properly characterized as 'mandatory' rather than 'prohibitory,' "

plaintiffs must meet "an even more rigorous standard." Plaintiffs must make a " 'clear' or 'substantial' showing of a likelihood of success." *Sprint Spectrum L.P. v. Mills,* 65 F.Supp.2d 148, 160 (S.D.N.Y. 1999) (citations omitted).

## II. Likelihood of Success on the Merits

Even if they had demonstrated irreparable harm (and I will assume that they have for the purposes of this motion), Plaintiffs cannot demonstrate likelihood of success on the merits on their § 1983 claim.

### A. *There Is No Constitutional Right to A Primary Election*

"To maintain a cause of action under § 1983 plaintiff must show: 1) that he has been deprived of a right, privilege, or immunity secured by the Constitution and laws of the United States; 2) that the defendants subjected plaintiff to this deprivation, or 'cause(d)' him to be so subjected; and 3) that the defendants acted 'under color of any statute, ordinance, regulation, custom, or usage, of any State" *Kletschka v. Driver,* 411 F.2d 436, 447 (2d Cir.1969).

■ Here, Plaintiffs cannot show that they are likely to succeed on the merits of their claim that they were deprived of their right to participate in a primary election for the office of Town Justice. Plaintiffs' federal claim is premised on an incorrect assumption—for which absolutely no legal authority is provided—that they have a constitutionally-secured right to force Greenburgh to hold a primary election.

■ No right to an election for state or local office—primary or general—is guaranteed by the United States Constitution. *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 36 n. 78, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) ("[T]he right to vote, per se, is not a constitutionally protected right ..."). The Constitution does not specify how state or local officers are to be selected, and the Supreme Court has

made clear that states need not hold democratic elections to fill those positions. *See generally, Fortson v. Morris,* 385 U.S. 231, 234, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966) (holding "There is no provision of the United States Constitution or any of its amendments which either expressly or impliedly dictates the method a State must use to select its Governor"); *Sailors v. Board of Ed. of Kent County,* 387 U.S. 105, 108, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967) (permitting appointment of school board members); *Rodriguez v. Popular Democratic Party,* 457 U.S. 1, 102 S.Ct. 2194, 72 L.Ed.2d 628 (1982) (permitting appointment of state legislators to fill vacancies). In fact, the Court has squarely held that states may utilize party conventions rather than primaries to resolve intraparty disputes over nominations for public office.

In *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), the Supreme Court rejected a challenge to a Texas ballot qualification system under which the large political parties were required to nominate candidates by primary elections, smaller parties could use either primaries or nominating conventions, and still smaller or new parties had to use precinct nominating conventions in the first instance. Justice White, writing for seven other Justices, stated,

> It is too plain for argument, and it is not contested here, that the State may limit each political party to one candidate for each office on the ballot and may insist that intraparty competition be settled before the general election by primary election or by party convention.

*American Party,* 415 U.S. at 781, 94 S.Ct. 1296.

*American Party* thus confirms the right of a State to provide for party conventions as an alternative to primaries as a means for selecting party candidates for public office.

■ Moreover, Plaintiffs' claim that holding a convention rather than a primary for Town Justice is somehow discriminatory is simply incorrect. Every voting system in this country "inevitably affects—at least to some degree—the individuals' right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). "When a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* at 434, 112 S.Ct. 2059 (quoting *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564); *see also Burdick v. Takushi*, 504 U.S. 428, 439, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (describing the burden as "slight"). The purpose of N.Y. Elec. Law § 6–116 is to encourage the democratic selection of officeholders in general elections, and to prevent appointees from serving any longer than necessary. It does this by permitting vacancies to be filled at the next general election, even when they are created so close to the general election that holding a primary for the vacancy would be impractical. *See generally Dorfman v. Berman*, 186 Misc.2d 415, 718 N.Y.S.2d 142, 143–144 (2000). Plaintiffs have not shown that § 6–116 is either discriminatory on its face or as applied to them.

**B. *Plaintiff's Have No Claim for "Temporal Gerrymandering"***

■ In its reply papers and at oral argument, counsel for Plaintiffs assert, as an alternative theory, that Plaintiffs were deprived of their constitutional right not to have government manipulate the nominating process to favor one candidate over another. That is, the constitutional deprivation here is based not merely on the *fact* that the Town Board "delayed" voting on the creation of the Third Justice position, but, rather, on the *reason or motive* the Board had for failing to act within the time needed to allow for a primary, rather than a nominating convention, to determine who would be the Democratic nominee for that office.

Unfortunately for Plaintiff Shapiro, Plaintiffs' alternative argument is no more persuasive than their original argument.

At oral argument, Plaintiffs conceded that there are no cases directly supporting such a proposition. Plaintiffs assert, however, that the Supreme Court has determined that the underlying *political activity*[1] at issue in this case—i.e. whether "Those who are clothed with governmental authority (the Town Board) have used that governmental authority in an intentional manner to prefer explicitly one political candidate over another political candidate to the exclusion of the Democratic process at its fullest expression"—presents a justiciable question. Plaintiffs are incorrect.

In *Davis v. Bandemer*, 478 U.S. 109, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986), member of the Indiana Democratic Party challenged the constitutionality of Indiana's 1981 state apportionment on the basis that the law unconstitutionally diluted the votes of Indiana Democrats. Finding that political gerrymandering claims are justiciable under the Equal Protection Clause, the Court nevertheless reversed the lower court's decision sustaining the challenge, because the lower court "applied an insufficiently demanding standard in finding unconstitutional vote dilution." *Bandemer*, 478 U.S. at 143, 106 S.Ct. 2797. The Justices did not announce an appropriate

---

**1.** Plaintiffs also have conceded that there is no claim in this action sufficient to bring them within the constitutional protections afforded to members of a suspect class.

standard of review for cases of geographic gerrymandering.

Plaintiffs characterize the Town Board's actions (or inactions) as "temporal gerrymandering," and contend that its actions are justiciable because they are akin to the "spatial gerrymandering" that was at issue in *Bandemer*. Ignoring for the moment Plaintiffs' forgivable inability to locate any jurisprudential discussion of "temporal gerrymandering," I am not convinced that *Bandemer* and its progeny offer even indirect support for Plaintiffs' claims.

Recently, in *Vieth v. Jubelirer*, —— U.S. ——, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004), the Supreme Court again took up the question of justiciability of political gerrymandering claims. In *Vieth*, the Court conducted a thorough review of the history of political gerrymandering cases since *Bandemer*. A four vote plurality found that "no judicially discernible and manageable standards for adjudicating political gerrymandering claims have emerged. Lacking them, we must conclude that political gerrymandering claims are nonjusticiable and that *Bandemer* was wrongly decided." *Vieth*, —— U.S. at ——, 124 S.Ct. at 1778. It is true that Justice Kennedy has left open the possibility that some future claimant might present a claim that met the justiciability requirement. *Id.* at 1793 (Kennedy, J., concurring) ("I would not foreclose all possibility of judicial relief if some limited and precise rationale were found to correct an established violation of the Constitution in some redistricting cases"). However, such a claim would have to surmount two extremely high barriers,

> First is the lack of comprehensive and neutral principles for drawing electoral boundaries. No substantive definition of fairness in districting seems to command general assent. Second is the absence of rules to limit and confine judicial intervention. With uncertain limits, intervening courts—even when proceeding with best intentions—would risk assuming political, not legal, responsibility for a process that often produces ill will and distrust.

*Id.*

Applying *Vieth* to this case, I conclude that Plaintiffs cannot possibly succeed on the merits. *Vieth* stands for a proposition diametrically opposed to the one espoused here by Plaintiffs. There is nothing unconstitutional about discriminating among political rivals, unless the discrimination in on suspect grounds (race, sex, nationality). *Cf. Pesano v. Anderson*, No. 97 Civ. 4049 CM, 1999 WL 232037, *1 (S.D.N.Y. April 13, 1999) ("Diminishing a political opponent's chances for reelection, whatever the motivation, does not constitute an adverse employment action.") There is no suggestion here that Shapiro is a member of a suspect class, or that he could assert some discrimination claim that is genuinely constitutional. His claim is that he was discriminated against because he was not the favored candidate of the Greenburgh Democratic discriminated against because he was not the favored candidate of the Greenburgh Democratic Party. After *Vieth*, it simply is not unconstitutional to "discriminate" on that ground.

Nor has Shapiro brought himself within the small space left open by Justice Kennedy in *Vieth*. Shapiro has not presented this court with "an established violation of the Constitution"—far from it—and he has not suggested any manageable standard under which I could evaluate such a claim if one had been advanced. It is hard to imagine what "substantive definition of fairness" could be pressed when the allegedly discriminatory act is the Town Board's refusal to hold a Special Meeting in order to create the new judgeship early enough to force a primary. New York law does not compel a municipality to create

an authorized political office in time for political parties to hold primaries in order to select their nominees; rather, the law merely requires that the position be authorized no later than 90 days prior to the general election, and provides for an alternative process by which nominees may be selected when the date of authorization is too late to make a primary feasible. Plaintiffs do not suggest that this statutory scheme is unconstitutional, and it is not unconstitutional. They argue instead that Defendants' motives were unconstitutional. I doubt that this argument ever held water, but after *Vieth,* it clearly does not.

Shapiro is not without recourse if he wishes to run for the new Town Justice position. He can get on the November ballot as an independent, or as the candidate of any of the many other political parties that compete for voters in this state. Of course, he will not likely be elected in the historically (and overwhelmingly) Democratic stronghold of Greenburgh. But nothing in the United States Constitution or in the cases cited by Plaintiffs in their moving brief guarantees him a particular party line or victory in the general election.

### CONCLUSION

Because Plaintiffs have not shown that they were deprived of a constitutional right under either the First or Fourteenth Amendment, they cannot show a likelihood of success on the merits. Without such a showing, Plaintiffs have no federal claim which may serve a basis for this Court to exercise its jurisdiction.

Plaintiffs' motion for a preliminary injunction is therefore denied.

This constitutes the decision and order of the Court.