# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-1374

_____

Steven Carlson; Mary Granzow;
Richard Kettells; William Ramsey,                 *
                                                  *
          Plaintiffs - Appellants,                *
                                                  *
                                                  *   Appeal from the United States
     v.                                           *   District Court for the Southern
                                                  *   District of Iowa.
                                                  *
Justice David Wiggins, in his official            *
capacity as Chairman of the State                 *
Judicial Nominating Commission;                   *
Jean Dickson; Steven J. Pace; Beth                *
Walker; Amy J. Skogerson; Joseph L.               *
Fitzgibbons; Guy R. Cook; H. Daniel               *
Holm, Jr., in their official capacities as        *
Elective Members of the State Judicial            *
Nominating Commission; Margaret G.                *
Redenbaugh; Coleen A. Denefe; Mary                *
Beth Lawler; Madalin A. Williams;                 *
David C. Cochran; Steve Brody;                    *
Timothy L. Mikkelsen, in their official           *
capacities as Appointive members of               *
the State Judicial Nominating                     *
Commission; David K. Boyd, in his                 *
official capacity as State Court                  *
Administrator,                                    *
                                                  *
          Defendants - Appellees.                 *

_____

Submitted: September 20, 2011

Filed: April 9, 2012 (Corrected April 10, 2012)
_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.
_____

BYE, Circuit Judge.

Steven Carlson, Mary Granzow, Richard Kettels, and William Ramsey (collectively, "Plaintiffs") filed a complaint and moved for a temporary restraining order and preliminary injunction, alleging section 16, article V, of the Iowa Constitution, as implemented by Iowa Code sections 46.2, 46.4-46.10, and 46.14, violated their Fourteenth Amendment right to equal protection under the laws. The district court[1] denied Plaintiffs' request for a temporary restraining order and scheduled the matter for a hearing on the preliminary injunction motion. The State moved to dismiss, arguing Plaintiffs had failed to state a claim upon which relief may be granted. After a hearing, the district court granted the State's motion to dismiss and denied Plaintiffs' motion for a preliminary injunction as moot. We affirm.

## I. BACKGROUND

In 1962, the people of Iowa voted to amend the Iowa Constitution and replace Iowa's elective judicial system with a merit selection system. Under this selection system, whenever a vacancy arises on the Iowa Supreme Court or the Iowa Court of Appeals, the State Judicial Nominating Commission ("Commission") must accept applications to fill the vacancy. See Iowa Const., art. V, §§ 15, 16. After reviewing all applications, the Commission creates a list of three nominees to submit to the Governor. See id.; see also Iowa Code §§ 46.14 and 46.14A. The Governor is to

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

appoint one of the three nominees to fill the vacancy. See Iowa Const., art. V, § 15. If the Governor fails to make an appointment within thirty days of receiving the nominations, the judicial appointment is to be made by the Chief Justice of the Iowa Supreme Court. See id.; see also Iowa Code § 46.15.

After serving for one year, the newly appointed judge must stand for retention in the next judicial election. See Iowa Const., art. V, § 17 (explaining "[j]udges shall serve for one year after appointment and until the first day of January following the next judicial elections after the expiration of such year"); see also Iowa Code § 46.16(1)(a). In a retention election, the people of Iowa vote "yes" or "no" on whether to retain the judge in office. See Iowa Const., art. V, § 17. If a majority of Iowa voters elect to retain the judge, the judge may then serve the remainder of his or her full term, as proscribed by the Iowa Constitution. See id.; see also Iowa Code § 46.16(1)(b) (providing "[t]he regular term of office of judges of the supreme court retained at a judicial election shall be eight years, and of judges of the court of appeals . . . shall be six years"). At the end of this term, the judge must again stand for retention.

The Commission currently consists of fifteen members. In accordance with the Iowa Constitution, seven of the fifteen members are "electors of the state" appointed by the Governor and confirmed by the state senate ("appointive members"); seven are attorneys elected by the resident members of the Iowa State Bar ("attorney members"); and the final member, who also serves as the chair of the Commission, is "[t]he judge of the [Iowa] [S]upreme [C]ourt who is senior in length of service on said court, other than the chief justice." Iowa Const., art. V, § 16. Members of the Commission serve for six years and are ineligible for a second term. Id. During their six-year term, the members may not hold any office of profit of the United States or the State of Iowa. Id.

On November 2, 2010, three Iowa Supreme Court justices stood for retention. A majority of Iowa voters elected not to retain them, leaving three vacancies on the Iowa Supreme Court as of January 1, 2011. On December 8, 2010, Plaintiffs, all registered voters in the State of Iowa, filed a complaint in the United States District Court for the Southern District of Iowa against all fifteen members of the Commission and David K. Boyd, in his official capacity as the State Court Administrator. Specifically, Plaintiffs moved for a temporary restraining order and preliminary injunction, seeking to enjoin the ongoing process to fill the three judicial vacancies on the Iowa Supreme Court. In their complaint, Plaintiffs alleged Iowa's method of electing the attorney members of the Commission denies Plaintiffs the right to equal participation in the selection of judges to the Iowa Supreme Court and the Iowa Court of Appeals, in violation of the Equal Protection Clause of the Fourteenth Amendment. See Complaint, at ¶ 3. On December 13, 2010, the district court denied Plaintiffs' motion for temporary retraining order and scheduled a hearing on the preliminary injunction motion. Defendants subsequently moved to dismiss, asserting Plaintiffs had failed to state a claim upon which relief may be granted.

On January 6, 2011, the district court held a consolidated hearing on Plaintiffs' request for preliminary injunction and Defendants' motion to dismiss. In a written memorandum opinion and order, the district court granted Defendants' motion to dismiss for failure to state a claim upon which relief may be granted and denied Plaintiffs' preliminary injunction motion as moot. The district court explained the Equal Protection Clause of the Fourteenth Amendment did not guarantee Plaintiffs a fundamental right to vote for the attorney members of the Commission. Therefore, the court concluded, the challenged provisions do not require strict scrutiny, but are only subject to rational basis review.

In the alternative, the district court stated rational basis review was nonetheless warranted due to the nature of the election at issue. The court rejected Plaintiffs' argument the election for the Commission's attorney members is an election of

general interest, subject to strict scrutiny, noting an election of general interest involves entities with traditional government powers over an entire geographic area. The Commission is not such an entity, the court determined. First, the Commission's functions are rather limited in that the Commission "simply 'selects and forwards to the Governor the names of three applicants it deems best qualified' for each vacant position" on the Iowa Supreme Court and the Iowa Court of Appeals. Carlson v. Wiggins, 760 F. Supp. 2d 811, 828 (S.D. Iowa 2011) (quoting Dool v. Burke, 2010 WL 4568993, at *3 (D. Kan. Nov. 3, 2010) (slip copy)). Second, the Commission's activities do not "have sufficient impact" on the daily lives of all Iowans. Instead, they impact a definable group of constituents—the members of the Iowa Bar—more than others. Based on the Commission's narrow functions and its disproportionate effect on a definable group of constituents, the court determined the election of the attorney members of the Commission is a special interest election to which rational basis review, rather than strict scrutiny, applies. Applying rational basis review, the district court concluded the election of the attorney members of the Commission by and from members of the Iowa Bar is rationally related to Iowa's legitimate interests, including the interest of selecting well-qualified judges and having the views of the attorneys of Iowa represented on the Commission.

On appeal, Plaintiffs argue the district court erred in dismissing their complaint for failure to state a claim on the ground Iowa's method of electing the Commission's attorney members does not violate Plaintiffs' rights under the Equal Protection Clause. Plaintiffs further argue the district court erred in concluding the election for the attorney members of the Commission is an election of special interest, subject to rational basis review. Contending the election is one of general interest, Plaintiffs claim the district court was required to apply strict scrutiny to Iowa's system of allowing only members of the Iowa Bar to participate in the election of the attorney members of the Commission. Because this "occupation-based" voter qualification cannot withstand strict scrutiny, Plaintiffs urge us to declare Iowa's method for electing the attorney members of the Commission unconstitutional.

## II. DISCUSSION

"We review *de novo* the district court's dismissal of an action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Walker v. Barrett, 650 F.3d 1198, 1203 (8th Cir. 2011) (quoting O'Neil v Simplicity, Inc., 574 F.3d 501, 503 (8th Cir. 2009)); see also Fed. R. Civ. P. 12(b)(6) (providing dismissal is proper when the complaint fails to state a claim upon which relief may be granted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks and citation omitted).

### A.

The Fourteenth Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. In the right-to-vote context, this equal protection of the laws has been interpreted to provide "a constitutionally protected right [for each citizen] to participate in elections on an equal basis with other citizens in the jurisdiction." Dunn v. Blumstein, 405 U.S. 330, 336 (1972); see also Rodriguez v. Popular Democratic Party, 457 U.S. 1, 9-10 (1982). Thus, the Supreme Court has interpreted the Equal Protection Clause to restrain states from (1) drawing disproportionate voting districts, Reynolds v. Sims, 377 U.S. 533, 567-68 (1964), and (2) "fixing voter qualifications which invidiously discriminate," Harper v. Va. State Bd. of Elections, 383 U.S. 663, 666 (1966).

First, in the so-called "vote denial" cases, the Supreme Court has invoked the Equal Protection Clause to prohibit states from imposing voter qualifications which result in the exclusion of a particular group from an election. See, e.g., Hill v. Stone,

421 U.S. 289, 297-301 (1975) (holding unconstitutional a voter qualification based on the payment of property taxes); Harper, 383 U.S. at 666 (stating a voter qualification based on "the affluence of the voter or [the] payment of any fee" violates the Equal Protection Clause). States, of course, have the power to restrict voter qualifications based on age, residence, and citizenship. See Kramer v. Union Free Sch. Dist. No. 15, 395 U.S. 621, 625 (1969). All other classifications are suspect and must withstand strict scrutiny to survive a constitutional attack. Hill, 421 U.S. at 297.

In addition to the vote denial cases, the Supreme Court has also relied on the Equal Protection Clause in the so-called "vote dilution" cases. In this line of cases, the Court has invoked the Equal Protection Clause to prohibit states from disproportionately dividing electoral districts by requiring the apportionment be made on a population basis. See, e.g., Reynolds, 377 U.S. at 568 (holding the Equal Protection Clause requires the apportionment of seats in a state legislature on a population basis). The purpose behind this population-based apportionment was to ensure each citizen's vote was equally effective, see id. at 568-69, and the principle enunciated as a result of it is best known today as the "one-person, one-vote" principle. See Branch v. Smith, 538 U.S. 254, 268 (2003) (discussing the constitutionally required one-person, one-vote principle enunciated in Reynolds); see also Perkins v. City of W. Helena, Ark., 675 F.2d 201, 215 (8th Cir. 1982) (noting the emphasis the Supreme Court places on the one-person, one-vote principle of Reynolds). Under this principle, "whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election[.]" Hadley v. Junior Coll. of Metro. Kan. City, Mo., 397 U.S. 50, 56 (1970). When the "one-person, one-vote" principle applies, deviations from it are subject to strict scrutiny. See Kramer, 395 U.S. at 626.

The Supreme Court has, however, established an exception to the "one-person, one-vote" principle. Notably, while states cannot deny citizens the right to vote on the basis of suspect classifications in general interest elections, see Avery v. Midland Cnty., Tex., 390 U.S. 474, 485-86 (1968), the Supreme Court has recognized states may restrict voting in the so-called special interest elections. See Ball v. James, 451 U.S. 355, 370-71 (1981); Salyer Land Co. v. Tulare Lake Basin Water Storage Dist., 410 U.S. 719, 728 (1973). The distinction between a general interest election and a special interest election turns on the type of elective entity involved. When the entity involved performs governmental functions "general enough . . . [to] have sufficient impact throughout the [State]," the election is one of general interest. Bd. of Estimate of City of N.Y. v. Morris, 489 U.S. 688, 696 (1989). In such an election, any classification restricting citizens' right to vote "on grounds other than residence, age, and citizenship cannot stand unless the . . . State can demonstrate that the classification serves a compelling state interest." Hill, 421 U.S. at 297. On the other hand, if the entity has a "special limited purpose and . . . [a] disproportionate effect" on a definable group of constituents, the election is a special interest election. Salyer, 410 U.S. at 728. In a special interest election, the State need only show the voting scheme under attack "bears a reasonable relationship to its statutory objectives." Ball, 451 U.S. at 371.

Plaintiffs concede voting restrictions in special interest elections are only subject to rational basis review. Plaintiffs assert, however, the election of the attorney members is a general interest election, subject to strict scrutiny, because the elective entity involved—the Commission—"performs a normal function of government and exercises traditional government authority, even if only the single power of nominating the judiciary" and thus, affects and interests all Iowans. Appellants' Br. at 21, 43.

-8-

B.

We begin by examining Plaintiffs's contention the Commission performs general, or traditional, governmental functions.  General governmental functions include the power to "levy and collect taxes, issue bonds with certain restrictions, hire and fire [employees], . . . make contracts, [and] collect fees."  Hadley, 397 U.S. at 53-54.  The ability to "enact . . . laws governing the conduct of citizens" and "administer such normal functions of government as the maintenance of streets, the operation of schools, or sanitation, health, or welfare services" has also been attributed to entities exercising general governmental powers.  Ball, 451 U.S at 366.  Lastly, to this non-exhaustive list of governmental functions, the Supreme Court has added the power to appoint county officials, adopt the county budget, fix school board boundaries, and establish a regional housing authority.  Avery, 390 U.S. at 476-77.

As the district court noted, the Commission does not exercise any of these general governmental functions.  The only power vested in the Commission is the power to select from a pool of eligible applicants the three most qualified candidates for judicial appointment and forward the names of these candidates to the Governor for final appointment.  In this regard, the Commission's function is not, as Plaintiffs suggest, to nominate judges to the Iowa Supreme Court and the Iowa Court of Appeals.  Rather, it is to nominate persons for judicial selection.  Because the ultimate power to make judicial appointments lies solely with the Governor, see Iowa Const., art. V, § 16, we reject Plaintiffs' attempt to equate the powers of the Commission with the powers of the Governor.  Contrary to Plaintiffs' assertion, the Commission's function is narrow and its purpose limited for the only power vested in it is the power to "screen candidates as part of the judicial appointment process" in the State of Iowa.  See Bradley v. Work, 916 F. Supp. 1446, 1456 (S.D. Ind. 1996).  Accordingly, we conclude the Commission does not exercise general governmental powers.  Based on the Commission's narrow function, we further conclude the Commission is a "special limited purpose" entity.  See, e.g., Ball, 451 U.S. at 366 (noting limited purpose

entities characteristically serve relatively narrow functions); see also Salyer, 410 U.S. at 728-29 (characterizing a water storage district as a special limited purpose entity because the district had "relatively limited authority . . . to provide for the acquisition, storage, and distribution of water"); Pittman v. Chicago Bd. of Educ., 64 F.3d 1098, 1102-03 (7th Cir. 1995) (describing a school council as an entity serving a special limited purpose based on the council's lack of power to collect taxes).

Having concluded the Commission does not exercise general governmental functions, we next consider whether the activities of the Commission have a sufficient impact on all Iowans or whether they disproportionately affect a definable group of constituents. Plaintiffs argue the activities of the Commission affect all eligible voters in the State of Iowa because "[a]ll Iowans are interested in and affected by the nominations of judges." Appellants' Br. at 43. While we agree all Iowans share an interest in having the most qualified judges appointed to the bench, Plaintiffs again conflate the relatively narrow function of the Commission to select judicial candidates with the Governor's power to appoint judicial officers. As explained above, the sole function of the Commission is to screen the applications it receives and select from these applications the three most qualified candidates to forward to the Governor for judicial appointments. We cannot agree with Plaintiffs this narrow function has a sufficient impact on all Iowans. Rather, we believe the Commission disproportionately affects a definable group of constituents—the members of the Iowa Bar "as officers of the court and as potential candidates for judicial office"—whose interests in a fair and impartial judiciary are "different in nature and in scope from the interests of the general public[.]" Bradley, 916 F. Supp. at 1457.

Moreover, even if, as Plaintiffs suggest, the Commission's activities directly affect other constituents, the members of the Iowa Bar need not "be the only parties at all affected by the operations of the [Commission]." Ball, 451 U.S. at 371. An entity has a disproportionate effect on a definable group of constituents so long as the

-10-

effect of the entity's operations on the selected voters is "disproportionately greater than the effect on those seeking the vote." Id. Because the effect of the Commission's function of selecting the most highly qualified candidates for judicial appointment is disproportionately greater on the members of the Iowa Bar than on all other non-attorney voters in the State of Iowa, we reject Plaintiffs' assertion the activities of the Commission have a sufficient impact on all Iowans. See, e.g., Bradley, 916 F. Supp. at 1457 ("Attorneys, as officers of the court and as potential candidates for judicial office, are disproportionately affected by the screening process performed by the Commission.").

In sum, we conclude the Commission is a "special limited purpose" entity for its sole function is to select the most qualified candidates for judicial appointments and forward the names of these candidates to the Governor for a final appointment. This narrow function has a disproportionate effect on a definable group of constituents—the members of the Iowa Bar—over other voters in the State of Iowa. Therefore, the election of the attorney members of the Commission is an election of special interest. See Salyer, 410 U.S. at 728 (stating a special interest election involves an entity with a "special limited purpose . . . and [a] disproportionate effect" on a definable group of constituents over others). Voter qualifications in special interest elections are subject to rational rather than strict scrutiny review. See Ball, 451 U.S. at 371. Accordingly, to survive Plaintiffs' equal protection challenge, Iowa must only show its system of election for the attorney members of the Commission is rationally related to Iowa's legitimate interests. See id.

C.

Applying rational basis review, we agree with the district court Iowa's system of election for the Commission's attorney members by and from members of the Iowa Bar is rationally related to Iowa's legitimate interests. Undoubtedly, the State of Iowa has a legitimate interest in selecting the most highly qualified candidates to serve as

-11-

judges on the Iowa Supreme Court and the Iowa Court of Appeals. Candidates must be members of the Iowa Bar, see Iowa Code § 46.14, and are generally expected to have strong credentials, recognized integrity, and a distinguished legal career. Candidates must also demonstrate a commitment to promoting and upholding the independence, integrity, and impartiality of Iowa's judiciary, if appointed. See, e.g., Iowa Code of Judicial Conduct, Canon 1 (outlining the duties of Iowa's judicial officers). Thus, who better-suited to evaluate the credentials of judicial aspirants than other members of the Iowa Bar? Attorneys will typically be more familiar with the judicial candidates than the general public. They will be in a better position to evaluate each candidate's qualifications and determine who has "the legal acumen, the intelligence, and the [judicial] temperament to best serve the people of [Iowa]." See African-Am. Voting Rights Legal Defense Fund, Inc. v. State of Mo., 994 F. Supp. 1105, 1128 (E.D.Mo. 1997), aff'd, 133 F.3d 921 (8th Cir. 1998). Accordingly, we conclude Iowa's legitimate interest in selecting the most qualified judges encompasses an interest in having the views and expertise of Iowa's attorneys represented on the Commission to assist with this selection. We further conclude the State's decision to allow members of the Iowa Bar the opportunity to elect seven of their peers to serve as the Commission's attorney members bears a rational relationship to this legitimate interest. See, e.g., Bradley, 916 F. Supp. at 1458 ("Because of their familiarity with the integrity, skill and experience of their fellow members of the bar, the Lake County lawyers appear to be uniquely well-suited to select the best qualified attorney Commission members."). Therefore, Iowa's system for election of the attorney members of the Commission by and from members of the Iowa Bar does not violate Plaintiffs' rights under the Equal Protection Clause.

## III.   CONCLUSION

Accordingly, we affirm the district court's dismissal of Plaintiffs' action for failure to state a claim upon which relief may be granted. See McAdams v. McCord, 584 F.3d 1111, 113-14 (8th Cir. 2009) (stating we may affirm the district court's

-12-

dismissal of a complaint for failure to state a claim "on any basis supported by the record") (internal quotation marks and citation omitted).

_____