MATHESON, J.,
concurring.
I would affirm on the same grounds as Carlson v. Wiggins, 675 F.3d 1134 (8th Cir.2012), which rejected a similar challenge to Iowa’s merit judicial selection system. The Eighth Circuit determined that Iowa’s limitation on voting for attorney members of its nominating commission to Iowa lawyers was entitled to rational basis review because the commission performs a limited purpose, affects attorneys more than others, and therefore meets the Su *793 preme Court’s Salyer/Ball standard. See id. at 1140-42; see also Ball v. James, 451 U.S. 355, 370-71, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981); Salyer Land Co. v. Tulare Lake Basin Water Storage Dist., 410 U.S. 719, 728, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973).
Judge O’Brien’s concurring opinion concludes that the election of attorney members to the Kansas Supreme Court Nominating Commission (“Commission”) does not fit in the line of strict scrutiny cases that flow from Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). It also maintains that the franchise restriction does not fit comfortably within the Sal-yer/Ball exception to Kramer. It concludes that, because the Commission does not perform general government functions, the restriction on who may vote for attorney members of the Commission should not require strict scrutiny.
I agree that strict scrutiny should not apply, but I would rely on Salyer/Ball to reach this conclusion. In Hellebust v. Brownback, 42 F.3d 1331 (10th Cir.1994), we stayed within the Supreme Court’s Kramer/Salyer framework to affirm a successful equal protection challenge to a franchise restriction on the election of members to the Kansas State Board of Agriculture. Limiting the vote to delegates of Kansas agricultural organizations who attend the Board’s annual meeting fell outside the Salyer/Ball exception because the Board exercised “normal functions of state government.” Id. at 1335. The Board also did not have a disproportionate effect on the voting delegates. Id.
As in Hellebust, we can employ the Sal-yer/Ball standard here to determine whether rational basis scrutiny applies to restricting the voting franchise for the Commission’s attorney members to licensed Kansas attorneys. We need only decide whether the Commission performs a limited purpose and whether it has a disproportionate effect on the voting population of attorneys. It does both.
The Commission performs a limited role. It reviews applications for judicial vacancies and proposes a slate of three candidates from which the Governor appoints one to an open position. The Commission does not make, administer, or enforce laws. It has no taxing or borrowing authority. See Hadley v. Junior Coll. Dist. of Metro. Kansas City, Mo., 397 U.S. 50, 53, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970); Ball, 451 U.S. at 366, 101 S.Ct. 1811 (noting that the water and power district at issue could not mandate ad valorem taxes, enact laws, or “administer such normal functions of government as the maintenance of streets, the operation of schools, or sanitation, health, or welfare services”).
To meet the Salyer/Ball standard, it is not necessary that the Commission perform no government tasks. The water districts at issue in Ball and Salyer exercised some government functions. For example, both of the districts could issue bonds and condemn property using eminent domain. See Ball, 451 U.S. at 360, 101 S.Ct. 1811; Salyer, 410 U.S. at 730 n. 7, 93 S.Ct. 1224. However, the districts’ powers were limited. The Commission’s power is arguably even more limited. It performs one step in a judicial appointment process — screening applicants and selecting three nominees — that concludes when the Governor appoints.
The Commission also disproportionately affects attorneys. Only licensed Kansas attorneys may be nominated to serve as judges on a Kansas appellate court. See Kan. Stat. Ann. § 20-105 (Supreme Court); id. at § 20-3002(a) (Court of Appeals). The Commission’s task is to nominate attorneys to serve on the bench. Because only attorneys may apply, the *794 screening process affects attorneys more than it affects others.
The Commission’s selection of judicial nominees may to some degree affect the makeup of the Kansas judiciary and, therefore, affect the public at large. But the question is not whether those seeking the vote are affected to some degree, but “whether the effect of the entity’s operations on [the voting group is] disproportionately greater than the effect on those seeking the vote.” Ball, 451 U.S. at 371, 101 S.Ct. 1811. The voting group need not be “the only parties at all affected.” Id. Our focus is on the Commission’s effect, not the effect of the judiciary as a whole. The Commission’s role in choosing from the Kansas legal community the three most qualified applicants for a judicial vacancy has a disproportionate impact on the bar relative to the general population.
Whether the Commission serves a narrow, limited purpose and whether, as Judge O’Brien’s concurrence suggests, it does not exercise a general government function may be two sides of the same coin. But keeping a tie to the Kramer/Salyer framework is consistent with Hellebust and Supreme Court precedent.
Accordingly, I conclude that because the Commission serves a limited purpose — arguably more limited than the water districts in Salyer and Ball — and because it affects attorneys more than others, the franchise limitation on voting for attorney members of the Commission to Kansas lawyers must bear only a rational relationship to the objectives of the merit selection process. For many of the reasons stated in Judge O’Brien’s concurring opinion, that standard is easily met here.
Finally, one court has questioned whether the selection of attorney members for a nominating commission even qualifies as a popular election as contemplated by the Kramer/Salyer precedent because the entire process is essentially appointive rather than elective. See Bradley v. Work, 916 F.Supp. 1446, 1456 (S.D.Ind.1996) (explaining that a commission nomination system did not constitute a popular election but was closer to an executive appointment). Under this view, regardless of whether the Kansas Bar Association’s Board of Governors were to appoint the attorney members — as the Board of Governors does in Alaska, see Kirk v. Carpeneti, 623 F.3d 889, 890 (9th Cir.2010) — or whether members of the Kansas Bar choose them by voting, the attorney members join with four others appointed by the Governor to become part of an executive branch appointment process. That seems to be a far cry from the school board election in Kramer or even the water district election in Salyer. Nonetheless, as this case can be resolved because the Commission serves a limited purpose and affects attorneys more than others, I would affirm under Salyer/Ball.
McKAY,