IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

No. 11-1703

**FILED**

**April 2, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

TODD M.S.,
Respondent Below, Petitioner

v.

JULIE M.G.,
Petitioner Below, Respondent

Appeal from the Circuit Court of Kanawha County
Honorable Paul Zakaib Jr.
Civil Action No. 07-D-1799

REVERSED AND REMANDED

Submitted: February 19, 2013
Filed: April 2, 2013

Lyne Ranson, Esq.                          Travis A. Griffith, Esq.
Lyne Ranson Law Offices, PLLC              Olivio & Griffith Law Offices, PLLC
Charleston, West Virginia                  Charleston, West Virginia
Attorney for Petitioner                    Attorney for Respondent

The opinion of the Court was delivered PER CURIAM.

## SYLLABUS BY THE COURT

1. "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

2. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).

Per Curiam:

The petitioner father, Todd M.S., appeals the Order of Reversal and Remand Regarding Petition for Appeal from the Family Court Order of May 11, 2011, entered October 31, 2011, in the Circuit Court of Kanawha County.  In that order, the circuit court found that the parties had a "de facto" parenting plan under which the petitioner father was to provide all transportation for the parties' child for purposes of visitation following the petitioner father's relocation from West Virginia to Pennsylvania.  The petitioner father argues that the circuit court committed error in reversing the final order of the family court. Having fully considered the record in this matter in conjunction with the parties' briefs and the arguments presented, we determine that the circuit court erred in reversing the final order of the family court.  Accordingly, the circuit court's order is reversed and this case is remanded to the circuit court with directions to remand the case to the family court for entry of a new order modifying the parties' parenting plan.

## I.  Factual and Procedural Background

The petitioner father and the respondent mother, Julie M.G., were married in 2002.  They had one child together, a son, who was born on December 14, 2002.  Their marital home was located in Charleston, West Virginia.

1

The parties were divorced by order of the Family Court of Kanawha County entered August 2, 2008. Adopted into the final divorce order was an agreed parenting plan ("the parenting plan order"). Under the parenting plan order, the respondent mother is the primary custodial parent and the petitioner father has parenting time every other weekend and every Wednesday evening.[1] The parenting plan order also allowed each parent to have three non-consecutive weeks of vacation time with the child each year.[2] The parties followed the parenting plan order for approximately two years during which time they both continued to reside in Charleston.

In February of 2010, the petitioner father resigned from his job in Charleston and relocated to Fayetteville,[3] Pennsylvania, which is approximately five hours from Charleston. The petitioner father states that the purpose of the relocation was to be closer to his family members and to marry his current wife.

---

[1]The Wednesday evening visitation became an overnight visit on alternating Wednesdays after the child reached school age.

[2]A review of the parenting plan order in the appendix record reveals that it does not set forth a schedule for holidays, such as Christmas and Thanksgiving.

[3]According to the record, in addition to Fayetteville, the petitioner father has also resided Franklin County, Pennsylvania, and Chambersburg, Pennsylvania. All three of these locations appear to be approximately five hours from Charleston, West Virginia.

As a result of the petitioner father's relocation, compliance with the provisions of the parenting plan order regarding visitation became problematic. Consequently, during 2010, following the petitioner father's relocation, he exercised visitation with the child one weekend per month in Charleston. He also exercised visitation during a portion of the child's spring break that year and for approximately six weeks that summer.

Notwithstanding the respondent mother's arguments to the contrary, the record reflects that the parties were unable to reach an agreed-upon modification of the parenting plan order following the petitioner father's relocation to Pennsylvania. More specifically, the record contains copies of email correspondence between the parties beginning in March of 2010, one month after the petitioner father's relocation, in which the parties were clearly trying to modify the parenting plan order in light of the relocation. It is equally clear from this email correspondence that the parties were unable to reach an agreement; that they were contemplating a return to the family court to obtain a new parenting plan; and that their primary dispute involved the transportation of the child for purposes of the petitioner father's visitation. The petitioner father wanted the respondent mother to transport the child to

3

Morgantown, West Virginia,[4] whereas the respondent mother believed the petitioner father should pick up the child at her home in Charleston.[5]

Although the need for court intervention to modify the parenting plan order was contemplated by the parties, the first relief sought in the family court was a petition for

---

[4]Charleston is approximately 155 miles from Morgantown, which the petitioner father represents is approximately halfway between his home in Pennsylvania and Charleston.

[5]In one email communication, the respondent mother told the petitioner father the following:

> I told you I will not agree to make exchanges in Morgantown. That is not reasonable or workable for me. I understand it would be more economical for you and more convenient for you, and I understand that is your basis for asking that I agree to that . . . Your visitation is about you spending time with [our child], not what I can do . . . You made a choice to move to PA . . . However, you moved without complying with the statute [W.Va. Code § 48-9-403] and you did so knowing your move would make your visitation more difficult. And, you made your decision and moved without having a new plan in place. Your visitation will be more difficult because you decided to move so far away . . . I did not make any choice that created the problem and I will not agree to bear the consequence after the fact.

expedited modification of child support filed by the petitioner father on September 9, 2010.[6]

He did not seek a modification of the parenting plan order at that time.[7]

On or about September 27, 2010, the respondent mother filed a response to the petition for modification of child support and a counter-petition seeking to modify the parenting plan order.[8]  In her counter-petition, she alleged that the parties had experienced a change in circumstances (the petitioner father's relocation to Pennsylvania) which required a modification of the parenting plan order under West Virginia Code § 48-9-401 (2009).[9] She further alleged that the petitioner father had failed to file a notice of his relocation as required under West Virginia Code § 49-9-403 (2009) and that she "had made efforts to facilitate [the petitioner father's] visitation with the child despite no workable parenting plan being in place."  As part of her pleadings, she also set forth a proposed modification to the

---

[6]As grounds for the petition, the petitioner father argued that he no longer had an income because he had been discharged from his employment in Pennsylvania.  While the petitioner father's child support obligation was a contested issue below, it is not an issue in the appeal to this Court.

[7]Although the petitioner father is a lawyer, he was acting *pro se* at that time.

[8]The respondent mother, who is also a lawyer, initially acted *pro se* in these proceedings, as well.

[9]West Virginia Code § 48-9-401(a) provides, in relevant part, as follows: "Except as provided in section 9-402 [§ 48-9-402] or 9-403 [§ 48-9-403], a court shall modify a parenting plan order if it finds . . . that a substantial change has occurred in the circumstances of . . . one or both parents and a modification is necessary to serve the best interests of the child."

5

parenting plan order, which included requiring the petitioner father to travel to Charleston to pick up the child for purposes of his visitation with the child.

In his response to the respondent mother's counter-petition for a modification of the parenting plan order, the petitioner father agreed that his relocation was a change in circumstances under West Virginia Code § 48-9-401 that required a modification of the parenting plan order. While acknowledging the fact that he did not file the requisite notice under West Virginia Code § 49-9-403(b),[10] the petitioner father stated that he verbally informed the respondent mother of his anticipated relocation more than six months prior to the move.

---

[10]West Virginia Code § 48-9-403(b) provides, in part, that

> [u]nless otherwise ordered by the court, a parent who has responsibility under a parenting plan who changes, or intends to change, residences for more than ninety days must give a minimum of sixty days' advance notice, or the most notice practicable under the circumstances, to any other parent with responsibility under the same parenting plan.

Similarly, Rule 52 of the Rules of Practice and Procedure for Family Court provides, in part, that "[a] parent with responsibilities under a court ordered parenting plan who changes or intends to change residence for more than 90 days shall file with the circuit clerk and provide to the other parent a notice of relocation which complies with the requirements of W.Va. Code, § 48-9-403." On December 15, 2010, the petitioner father filed a "Notice Pursuant to W.Va. Code § 48-9-403 Nunc Pro Tunc."

On December 16, 2010, a hearing was held before the family court on all outstanding matters. During this hearing, the respondent mother argued for the first time that the parties had been following a "de facto" parenting plan since the petitioner father's relocation.[11] Thereafter, on February 1, 2011, the family court entered an order finding, inter alia, that under West Virginia Code § 48-9-402 (2009), "[w]hen a change in a parenting plan exists, despite an established parenting plan for a period of time, a de facto parenting arrangement occurs."[12] The family court then ordered the petitioner father to provide all transportation for the child to and from Pennsylvania for his parenting time.

---

[11]At this December 16, 2010, hearing, the respondent mother was represented by her current counsel, Mr. Griffith, who filed a notice of appearance in the family court on December 8, 2010.

[12]West Virginia Code § 48-9-402 states, in relevant part, as follows:

> (b) The court may modify any provisions of the parenting plan without the showing of change [sic] circumstances required by subsection 9-401(a) if the modification is in the child's best interests, and the modification:
>
> (1) Reflects the de facto arrangements under which the child has been receiving care from the petitioner, without objection, in substantial deviation from the parenting plan, for the preceding six months before the petition for modification is filed . . .

For reasons more fully explained below, we do not believe that West Virginia Code § 48-9-402 is applicable to the facts and circumstances of the case at bar.

7

Thereafter, the petitioner father filed a motion seeking a clarification of outstanding parenting issues in the family court, as well as a motion to reconsider the February 1, 2011, order,[13] on the basis that the order was inconsistent with the family court's rulings made during the December 16, 2010, hearing. The family court held a hearing on the petitioner father's motion for clarification on March 2, 2011.[14] During this hearing, the petitioner father presented the family court with a proposed parenting schedule for the period of March of 2011, through August of 2012.

On May 11, 2011, the family court entered a final order[15] which reflects that it "accepted" the parenting plan proposed by the petitioner father covering the period of March 2011 through August 2012, with primary custodial responsibility remaining with the respondent mother ("final order").[16] The provisions of the final order also clarified the

[13]When these motions were filed on February 25, 2011, the petitioner father was represented by his current counsel, Ms. Ranson.

[14]We note that although various orders of the courts below indicate that this hearing was held on March 2, 2011, the transcript of this hearing indicates that it was held on March 15, 2011. For purposes of this opinion and to avoid confusion, we will refer to the hearing date as March 2, 2011.

[15]Although the final order states that the petitioner father's motion for reconsideration was being held in abeyance, the final order substantively changed the family court's earlier February 1, 2011, order; thus, in effect, the final order was a reconsideration of the February 1 order. Further, to the extent the family court's final order did not dispose of the motion for reconsideration, the motion has been rendered moot by this Court's decision.

[16]The family court's final order also provided that "[t]he parties should meet and
(continued...)

8

family court's prior order with regard to shared responsibility in the transportation of the child by requiring the respondent mother to transport the child to Bridgeport, West Virginia,[17] beginning in October of 2011, in order to facilitate the petitioner father's parenting time. The final order provided, in pertinent part, as follows:

> The Court found that Mother is pregnant with her second child and has experienced medical problems with her previous pregnancy that limited her mobility. Therefore, after mother gives birth to her second child who is expected to be born in September, 2011, the parties will share in the transportation of the minor child. Mother and Father will meet in Bridgeport beginning the month of October, 2011 to transfer the minor child unless noted otherwise herein. The Court specifically said if the mother leaves work at 5:00 p.m. she can get to Bridgeport in time for the exchange at 7:00 p.m. Until October, 2011, Father will pick up and drop off the minor child in Charleston. Father's parenting may occur in any location he so chooses.

The respondent mother appealed the family court's final order to the circuit court. Following a hearing on the appeal, the circuit court entered an order on October 31, 2011, reversing the family court's final order. The circuit court found that the parties' had entered into a "de facto" parenting plan under West Virginia Code § 48-9-402 following petitioner father's relocation. The circuit court concluded that the family court had abused

---

[16](...continued)
discuss the parenting schedule for the remainder of 2012. In the event that the parties cannot agree they are ordered to attend mediation to set a schedule for the 2012-2013 year." Despite this directive, the record does not indicate that the parties sought to mediate this matter.

[17]Bridgeport is approximately 124 miles from Charleston.

9

its discretion in modifying the "de facto" plan at the petitioner father's request, including requiring the respondent mother to share in the transportation of the child for purposes of the petitioner father's visitation, without the petitioner father showing that there had been a substantial change in circumstances[18] since his relocation to Pennsylvania. The circuit court remanded the matter to the family court for entry of an order in conformity with the circuit court's rulings.

It is from the circuit court's October 31, 2011, order that the petitioner father now appeals.

## II. Standard of Review

We are asked to review a circuit court's order entered upon an appeal of a family court order. Our standard of review in this regard is well established:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). *See also*, Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on

---

[18]*See* West Virginia Code § 48-9-401(a) at note 9, *supra*.
.

10

an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With these standards in mind, the petitioner father's arguments will be considered.

## III. Discussion

In the present appeal, the petitioner father raises several issues for our review. First, he asserts that the parties had not entered into a "de facto" parenting plan following his relocation. Second, he argues that the circuit court erroneously found that West Virginia Code § 48-9-403(d)(1)[19] gives "deference" in making parenting plan decisions to the parent

---

[19]West Virginia Code § 48-9-403(d)(1) provides, as follows:

> A parent who has been exercising a significant majority of the custodial responsibility for the child should be allowed to relocate with the child so long as that parent shows that the relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose. The percentage of custodial responsibility that constitutes a significant majority of custodial responsibility is seventy percent or more. A relocation is for a legitimate purpose if it is to be close to significant family or other support networks, for significant health reasons, to protect the safety of the child or another member of the child's household from significant risk of harm, to pursue a significant employment or educational opportunity or to be with one's spouse who is established, or who is pursuing a significant employment or educational opportunity, in another location. The relocating parent has the burden of proving of the legitimacy of any other purpose. A move with a legitimate purpose is reasonable unless its purpose is shown to be substantially achievable without moving or by

(continued...)

11

with seventy percent or more of the custodial responsibility for a child. Finally, the petitioner father argues that the circuit court abused its discretion by determining the parties' respective caretaking functions in a manner inconsistent with the provisions of West Virginia Code § 48-9-403(e);[20] by substituting its judgment for that of the family court even though the family court's modification of the parenting plan order was authorized under West Virginia Code §§ 48-9-401[21] and 48-9-403(a);[22] and by disregarding not only his rights as the non-custodial parent,[23] but also the best interests of the child. In this regard, the petitioner father asserts that the family court's final order directing that the parties share in the transportation of the child for purposes of his parenting time is in the child's best interest as it will allow the child

---

[19](...continued)
>
>> moving to a location that is substantially less disruptive of the
>> other parent's relationship to the child

[20]West Virginia Code § 48-9-403(e) provides, as follows: "In determining the proportion of caretaking functions each parent previously performed for the child under the parenting plan before relocation, the court *may not consider* a division of functions arising from any arrangements made after a relocation but before a modification hearing on the issues related to relocation." *Id.* (emphasis added).

[21]*See supra* note 9.

[22]West Virginia Code § 48-9-403(a) provides that "[t]he relocation of a parent constitutes a substantial change in the circumstances under subsection 9-401(a) [§ 48-9-401] of the child only when it significantly impairs either parent's ability to exercise responsibilities that the parent has been exercising."

[23]The petitioner father asserts that the circuit court's order results in a reduction of his parenting time over the summer and school breaks as compared to what he had in either 2010 or 2011.

to spend more time with his immediate paternal family in Pennsylvania. We will address the petitioner father's arguments in our discussion of the circuit court's rulings below.

The primary issue in this appeal involves the modification of the parties' parenting plan order.[24] In this regard, we address two rulings of the circuit court upon which all of its other rulings were seemingly based: (1) that the parties had entered into a "de facto parenting plan" following the petitioner father's relocation, which supplanted their parenting plan order and which must dictate the terms of the court-ordered modification thereof, and (2) that the parenting plan decisions of the respondent mother, as the primary custodial parent, are to be given deference, including with regard to any modification to the parenting plan order.

Once a parenting plan is in place, it may be modified under certain circumstances as specified by statute. As we explained in *Skidmore v. Rogers*,

> [o]nce entered, a parenting plan order may only be modified under certain circumstances. W.Va. Code §§ 48-9-401, -402, -403 & -404. Specifically, section 401 provides for modification upon a showing of changed circumstances or harm to a child, section 402 provides for modification without a showing of changed circumstances, section 403 provides for modification upon the relocation of a parent, and section 404 provides for modification due to a parent's military service.

---

[24]As indicated previously, the parties' "parenting plan order" is the parenting plan adopted into their final divorce order.

13

*Id.*, 229 W.Va. 13, __, 725 S.E.2d 182, 188 (2011).

In the case at bar, the circuit court relied upon West Virginia Code § 48-9-402[25]–which contemplates the modification of a parenting plan without showing a change in circumstances as required by West Virginia Code § 48-9-401(a)–to find that the parties entered into a "de facto" parenting plan following the petitioner father's relocation to Pennsylvania. The circuit court further found that the family court had abused its discretion by modifying this "de facto" plan when there had been no significant change in the circumstances of the parties or the child under West Virginia Code § 48-9-401 since the petitioner father's relocation.[26] The respondent mother argues that the circuit court was correct in these rulings. We disagree.

---

[25]*See supra* note 12.

[26]The circuit court found that the change in the petitioner father's employment and economic status and his remarriage, all of which occurred after his relocation, were not a significant change in circumstances under West Virginia Code § 48-9-401 that would justify a modification of the "de facto" parenting plan. Subsection (c) of West Virginia Code § 48-9-401 provides, in part, as follows:

> Unless the parents have agreed otherwise, the following circumstances do *not* justify a significant modification of a parenting plan except where harm to the child is shown:
> (1) Circumstances resulting in an involuntary loss of income, by loss of employment or otherwise, affecting the parent's economic status;
> (2) A parent's remarriage . . . .

*Id.* (emphasis added). As discussed more fully, *infra*, there was no "de facto" parenting plan in the case *sub judice* and the petitioner father's relocation is the substantial change in circumstances that warranted the entry of the family court's final order modifying the parties' parenting plan order.

14

Contrary to the circuit court's order, West Virginia Code § 48-9-402 does not provide for "de facto" parenting plans. Rather, this statute states that a court "may" modify a parenting plan–in the absence of a substantial change in circumstances under West Virginia Code § 48-9-401(a)–if the modification reflects the parents' agreed upon *de facto arrangements* in substantial deviation from their parenting plan. W.Va. Code § 48-9-402(b).[27] In other words, where parents have been following de facto parenting arrangements for at least six months, without objection and in substantial deviation from their court-ordered parenting plan, but without a substantial change in circumstances, a parent may seek a modification to the parenting plan that reflects those agreed upon de facto arrangements.

Here, as the parties originally–and correctly–contemplated, West Virginia Code § 48-9-402 has no application under the facts and circumstances of the case *sub judice.* In the respondent mother's counter-petition to modify the parent plan order filed in the family court, she relied instead upon both West Virginia Code § 48-9-401 (providing for modification upon, inter alia, a substantial change in circumstances) and § 48-9-403 (providing that the relocation of a parent is a substantial change in circumstances under § 48-9-401(a)).[28] She alleged that "[a]s [the petitioner father] has relocated, it is not possible for him to comply with the parenting plan currently in place [i.e., the parenting plan order]. [The

---

[27]*See supra* note 12.

[28]*See supra* note 9.

15

respondent mother] has made efforts to facilitate [the petitioner father's] visitation with the child *despite no workable parenting plan being in place*." (emphasis added). The parties clearly agreed, as does this Court, that the petitioner father's relocation was, in fact, a change in circumstances under West Virginia Code § 48-9-401(a) that required a modification of the parenting plan order under the relocation statute, West Virginia Code § 48-9-403.

The respondent mother later argued in the courts below that the petitioner father's failure to file a timely notice of relocation meant that the parties parenting plan order should be modified under West Virginia Code § 48-9-402 and in accordance with their "de facto" parenting plan.[29] However, West Virginia Code § 48-9-403(b) expressly contemplates such failures and provides, in relevant part, as follows:

> Failure to comply with the notice requirements of this section without good cause may be a factor in the determination of whether the relocation is in good faith under subsection (d) of this section and is a basis for an award of reasonable expenses and reasonable attorney's fees to another parent that are attributable to such failure.

---

[29]Again, as we previously explained, there is no "de facto" parenting plan.

16

W.Va. Code § 48-9-403(b). Simply stated, a relocating parent's failure to comply with these statutory notice requirements does not negate the applicability of the relocation statute (West Virginia Code § 48-9-403).

In light of the foregoing, we find that the circuit court erred in concluding that West Virginia Code § 48-9-403 does not govern the modification of the parenting plan order; in finding that the parties had entered into a "de facto" parenting plan as a result of the petitioner father's relocation; and in finding that this "de facto" plan could not be modified at the petitioner father's request unless he showed a significant change in circumstances after his relocation.

We now turn to the circuit court's ruling that the family court abused its discretion by not providing deference to the respondent mother because "[u]nder the West Virginia parent relocation statute [West Virginia Code § 48-9-403], a parent having seventy percent (70%) or more of the custodial responsibility over a child, pursuant to a parenting plan, shall be given deference when making parenting plan decisions." Although the respondent mother argues that the circuit court was correct in this ruling, we disagree and find that the circuit court erred in this regard.

17

We look to the language of West Virginia Code § 48-9-403 to determine whether there is any foundation for the circuit court's ruling. In applying West Virginia Code § 48-9-403, we stated that where "the legislative intent is clearly expressed in the statute, this Court is not at liberty to construe the statutory provision, but is obligated to apply its plain language." *Storrie v. Simmons*, 225 W.Va. 317, 326, 693 S.E.2d 70, 79 (2010) (internal citations omitted). Further, in syllabus point 2 of *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951), we stated that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."

Under the clear and unambiguous language of West Virginia Code § 48-9-403(d)(1),[30] a parent who has been exercising seventy percent or more of the custodial responsibility should be allowed to relocate with the child so long as that parent shows that the relocation is in good faith, for a legitimate purpose, and that the new location is reasonable in light of the stated purpose. The plain language of the statute does not accord deference to the primary custodial parent with regard to all parenting plan decisions. *See* Syl. Pt. 11, in part, *Brooke B. v. Donald Ray C., II*, __ W.Va. __, 738 S.E.2d 21 (2013) ("[i]t is not for this Court to arbitrarily read into a statute that which it does not say."). We therefore

---

[30]*See supra* note 19.

18

conclude that the circuit court committed error in finding that the respondent mother is to be given deference in all parenting plan decisions.[31]

In consideration of all of the above, we reverse the circuit court's order which wrongly concluded that the family court abused its discretion through the provisions of the family court's final order. Having determined that the circuit court erred in reversing the family court's final order, we observe that the parenting plan set forth therein only covered the period of March 2011 through August 2012.[32] Consequently, we remand the case and direct that the family court shall modify the parties' parenting plan order to cover the period until the child either attains the age of eighteen years, graduates high school, or upon further order of the family court.

## IV. Conclusion

Based upon the foregoing, the order of the Circuit Court of Kanawha County entered October 31, 2011, is reversed, and this case is remanded to the circuit court for

---

[31] Furthermore, West Virginia Code § 48-9-403(d)(1) has no application to this case because the petitioner father, the non-custodial parent, is the party who chose to relocate.

[32] We further observe that the allocation of costs in the family court's final order—through shared transportation of the child for purposes of the petitioner father's visitation—is specifically provided for under West Virginia Code § 48-9-403(c), which states, in part, that "the court may consider the additional costs that a relocation imposes upon the respective parties for transportation and communication, and may equitably allocate such costs between the parties."

purposes of entering an order remanding this matter to the family court for entry of an order modifying the parenting plan order consistent with this opinion.

Reversed and Remanded with Directions