No. 16-0013 -  State of West Virginia ex rel. Belinda Biafore v. Earl Ray Tomblin, Governor

LOUGHRY, Justice, concurring:

While courts are occasionally called upon to resolve a legal issue at the heart of a political dispute, neither this Court nor any court is constituted for the purpose of being played as a political trump card. Here, the petitioner Democratic Party alleges a lack of clarity in a statute that is perfectly clear.  In fact, the clarity with which the subject statute addresses the precise issue presented leads to the inescapable conclusion that this extraordinary proceeding is a thinly-veiled attempt to bait the members of this Court into a partisan resolution.  I am reassured that a majority of this Court refused to do so, as reflected in its well-reasoned opinion utilizing the canon of statutory construction that "follow[s] the statute's plain, unambiguous language." *State v. Boatwright*, 184 W.Va. 27, 29, 399 S.E.2d 57, 59 (1990).  I also believe that any layperson would have reached the same, inescapable conclusion.

West Virginia Code § 3-10-5, states, in pertinent part, as follows:

(a) Any vacancy in the office of State Senator . . . shall be filled by appointment by the Governor, from a list of three legally qualified persons *submitted by the party executive committee of the party with which the person holding the office immediately preceding the vacancy was affiliated.* . . . If the list is not submitted to the Governor within the fifteen-day period, the Governor shall appoint within five days thereafter a legally qualified person *of the same political party as the person vacating the office.*

1

W.Va. Code § 3-10-5 (2013) (emphasis added). While the Court need not consider the legislative history of this unambiguous statute,[1] such history makes clear that the statute accommodates, and specifically contemplates, the issue presented.

When West Virginia Code § 3-10-5 was enacted in 1863, and for the following sixty years, there was no reference to political party affiliation because any vacancy in the state senate that occurred during that period was filled through a "writ of election."[2] In 1925, the statute, then codified as West Virginia Code Chapter 4, §7, was amended and revised to create separate procedures for filling vacancies in the state senate depending upon whether

---

[1]*See Boatwright*, 184 W.Va. at 29, 399 S.E.2d at 59 (quoting *Cooper v. Tazewell Square Apartments, Ltd.*, 577 F.Supp 1483, 1487 (W.D.Va.1984), *rev'd on other grounds*, 606 F.Supp. 1397 (W.D.Va.1985)) ("When the statute is unambiguous on its face, there is no real need to consider its legislative history.").

[2]        A writ of election to fill a vacancy in the legislature shall be issued by the governor when the vacancy occurs during the recess of the legislature, and by the president of the senate or speaker of the house of delegates, as the case may be, when such vacancy happens during the session, or has not been previously filled. The said writ shall be directed to the sheriff of the proper county, or to the sheriffs of the several counties included in the delegate or senatorial district, as the case may be, and shall prescribe the day of election; and every sheriff, on receiving the same, shall immediately give notice thereof to the supervisors and inspectors of election of the several townships of his county; and shall also cause notice of the same to be conspicuously posted at every place of voting in such county, and to be published in the newspapers, if there be any, printed therein.

1863 W.Va. Acts 127.

the departing senator died, or left office by resignation or some other means. When the vacancy was the result of death, we see the first mention of political parties:

> Whenever a vacancy in the legislature shall occur by the death of a member of the senate, the clerk of the circuit court from which county said senator resided at the time of his election shall immediately notify the chairman and secretary of the senatorial executive committee of said senatorial district *of the political party of which said member of the legislature belonged*, of such vacancy, . . . and it shall be the duty of senatorial executive committee to name a person duly qualified under the law to fill the vacancy, and the person so named by the senatorial executive committee *shall be a member of the same political party to which the former senator belonged* and from the county in which he resided at the time of his election, and it shall be the duty of the chairman and secretary of the senatorial executive committee to immediately certify to the governor of the state of the act of the meeting naming a person for the vacancy, and the governor of the state then shall appoint such person to fill such vacancy until a senator is elected at the next general election and has qualified. . . .

W.Va. Code § 4-7 (1925) (emphasis added); *see also* 1925 W.Va. Acts 176.[3] Although the political party language was added in 1925, presumably because vacancies would now be filled by appointment, as opposed to the previously required writs of election, the legislature did not at that time include any temporal language with regard to the "political party of which said member of the legislature belonged[.]"

---

[3]When the vacancy occurred by "resignation or otherwise than by death," the vacancy continued to be filled through a "writ of election." W.Va. Code § 4-7 (1925).

3

During the recodification of the West Virginia Code in 1931, the subject statute was redesignated as West Virginia Code § 3-10-6, and provided the following temporal component regarding party affiliation that has remained to this day:

> Any vacancy in the office of state senator . . . shall be filled by appointment by the governor, in each instance from a list of three legally qualified persons submitted by . . . the party executive committee of the state senatorial district in the case of a state senator, *of the party with which the person holding the office immediately preceding the vacancy was affiliated . . . .*

W.Va. Code § 3-10-6 (1931) (emphasis added).[4] Although legislative history in West Virginia is minimal, at best, the 1931 Code contains "Revisers' Notes." For this particular statute, the Revisers' Note commented on the filling of a vacancy in the legislature by appointment, noting that a special election to fill such a vacancy "would incur an unjustifiable expenditure of public funds." *Id.* The Revisers' Note also references the fact that the "the appointment [will now] be made from a list of *three* submitted by . . . the party executive committee of the state senatorial district, as to a state senator[.]" (Emphasis added). This was a change from the statute as it existed in 1925, which provided for the senatorial

_____

[4]Available legal resources reveal that there are no bound volumes of the West Virginia Code for the years 1926 through 1930. There are, however, bound copies of the Report of the Revision and Codification Commission published in 1927, 1928, and 1929. This Commission was appointed pursuant to a legislative act passed in 1921, entitled "An Act providing for the revision, codification and indexing . . . of the statute law of West Virginia . . . ." *W.Va. Report of the Revision and Codification Commission* (1927). The Commission's Report sets forth the temporal component that was included in the recodification of the West Virginia Code in 1931.

executive committee to name only one qualified person to fill the vacancy, as indicated above.

In 1963, the legislature repealed chapter three of the West Virginia Code and enacted a new chapter three, "all relating to the establishment, administration and regulation of elections and election procedures[.]" 1963 W.Va. Acts 221. At this time, section 6 (West Virginia § 3-10-**6**) was redesignated as section 5 (West Virginia Code § 3-10-**5**). The imposition of the mandatory time limit for the executive committee to submit the list of three names from which the Governor is to fill the senate vacancy, and the consequences if the committee fails to do so, was added by the legislature in 1975, as follows: "If such list is not submitted to the governor within the fifteen day period, the governor shall appoint within five days thereafter a legally qualified person *of the political party of the person vacating the office.*" W.Va. Code § 3-10-5 (1975) (emphasis added); *see also* 1975 W.Va. Acts 415.[5]

---

[5]In 2010, the legislature subdivided the statute into its current subsections (a), (b), and (c), and made minor changes to the last sentence of subsection (a), as follows: "If the list is not submitted to the Governor within the fifteen day period, the Governor shall appoint within five days thereafter a legally qualified person of the same political party as the person vacating the office." 2010 W.Va. Acts 951-52. Subsection (c) was revised in 2013 to provide, as follows:

In the case of a State Senator, the list shall be submitted by the party executive committee of the state senatorial district in which the vacating senator resided at the time of his or her election or appointment. The appointment to fill a vacancy in the State Senate is for the unexpired term, unless section one of this

(continued...)

As reflected in the legislative history discussed above, and for the last eighty-five years, West Virginia Code § 3-10-5 has clearly provided that "the party with which the person holding the office *immediately preceding the vacancy* was affiliated[]" dictates the party of his or her appointed replacement. W.Va. Code § 3-10-5(a) (emphasis added). It is this temporal component in West Virginia Code § 3-10-5(a) that renders the Kansas and Wyoming cases relied upon by the petitioners inapplicable and unpersuasive to the matter at hand. Unlike the subject statute, the Kansas and Wyoming statutes lacked a temporal provision. *See Wilson v. Sebelius*, 72 P.3d 553 (Kan. 2003) (interpreting statutory phrase "of the party" and finding that party affiliation at time of election controls); *Richards v. Bd. of Cnty. Comm'rs*, 6 P.3d 1251 (Wyo. 2000) (finding statutory language "the political party to which the member whose office is vacant belonged" to be ambiguous and concluding that political party to which commissioner belonged at time of his election controlled).[6]

---

[5](...continued)

> article requires a subsequent election to fill the remainder of the term, which shal follow the procedure set forth in section one of this article.

2013 W.Va. Acts 850-51.

[6]In 2004, the Wyoming legislature amended Wyoming Code § 18-3-524 by deleting the word "belonged" in the phrase "of the political party to which the member whose office is vacant *belonged*[;]" by adding language that now reads: "of the political party to which the member whose office is vacant *represented at the time of his election . . . or at the time of his appointment if not elected to office*[;]" and by adding subsection (d), which states, in part, that "a person shall be considered to 'represent' a political party if he was a nominee of that political party when elected to office or when appointed to fill a vacancy in office." Wyo. Stat. Ann. § 18-3-524(a) and (d) (emphasis added).

Notwithstanding the clear and unambiguous language in West Virginia Code § 3-10-5(a), the petitioners contend the statute is ambiguous and essentially ask this Court to amend the statute with language that would require a vacancy in the state senate to be filled by a member of the political party with which the vacating senator was affiliated at the time of his or her election. However, as I have previously explained, "'[c]ourts are not free to read into the language what is not there, but rather should apply the statute as written.' *State ex rel. Frazier v. Meadows*, 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994)." *Robinson v. City of Bluefield*, 234 W.Va. 209, 220-21, 764 S.E.2d 740, 751-52 (2014) (Loughry, J., dissenting). In fact,"'[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.' *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W.Va. 297, 312, 465 S.E.2d 399, 415 (1995) (internal citation omitted)." *Robinson*, 234 W.Va. at 220, 764 S.E.2d at 752 (Loughry, J., dissenting). Moreover, when "'[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.'" *Todd M.S. v. Julie M.G.*, 230 W.Va. 612, 619-20, 741 S.E.2d 837, 844-45 (2013) (quoting Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)).

Here, the "immediately preceding the vacancy" language in West Virginia Code § 3-10-5(a) has been in place since at least 1931. During the intervening decades, the legislature could have amended this statute by removing this particular language and

7

replacing it with language that would require looking to the vacating senator's political party affiliation at the time of his or her election for purposes of filling the vacancy. It has not done so. Furthermore, ambiguity does not materialize at the mere suggestion of a dispute. The fact that the petitioners have conjured an argument feigning confusion over clear statutory language does not, in itself, create an ambiguity. Importantly, absent ambiguity, this Court is constrained to apply the statute, as written.[7]

---

[7]Although *Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982), was mentioned in a footnote in the petitioners' appellate brief, during oral argument, a member of the Court elicited a discussion as to whether *Rodriguez* would call into question the constitutionality of West Virginia Code § 3-10-5. Notwithstanding the absence of any meaningful discussion of *Rodriguez* in the parties' briefs, there are significant differences between West Virginia Code § 3-10-5 and the statutory procedure for filling vacancies under consideration in *Rodriguez*. Further, in *Rodriguez*, the statute allowed the political party of the member whose seat was vacated to make an appointment to fill the vacancy by holding an election among its members. The appellants argued that this procedure, which excluded voters who were not members of that political party from voting, denied them equal protection. Citing its prior rulings, the Court reaffirmed that the filling of a vacancy on an interim basis by appointment, rather than by election, is constitutional and that "[n]o provision of the Federal Constitution expressly mandates the procedures that a state . . . must follow in filling vacancies in its own legislature." *Id.* at 8. The Court further explained that "Puerto Rico's appointment mechanism is not rendered constitutionally defective by virtue of the fact that the interim appointment power is given to the political party with which the previous incumbent was affiliated." *Id.* at 12. Importantly, the Court also noted that "[t]he methods by which . . . Puerto Rico . . . [has] chosen to structure the Commonwealth's electoral system are entitled to substantial deference." *Id.* at 8. Here, the legislature has chosen to give the party executive committee with which the person holding the office immediately preceding the vacancy was affiliated the authority to name three qualified persons to fill the vacancy. W.Va. Code § 3-10-5; *see also* W.Va. Const., art. VI, § 24 ("Each house shall determine the . . . qualifications of its own members."). Accordingly, and as thoroughly explained in the majority opinion, the rulings set forth in *Rodriguez* do not render West Virginia Code § 3-10-5 unconstitutional.

When Mr. Hall vacated his senate seat on January 3, 2016, he was affiliated with the Republican Party. Under these facts, and giving full force and effect to West Virginia Code § 3-10-5, as written, I am compelled to conclude that although Mr. Hall was affiliated with the Democratic Party at the time of his election in 2012, his party affiliation at the time he vacated his senate seat controls. W.Va. Code § 3-10-5(a).

Notwithstanding the political nature of the instant matter, "[a]n independent, fair and impartial judiciary is indispensable to our system of justice. The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply that law that governs our society." Preamble, Code of Jud. Conduct. As mandated by the Code of Judicial Conduct, a judge "shall not be swayed by public clamor or fear of criticism" and "shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment." Canons 2.4(A) and (B). Indeed,

> [a]n independent judiciary requires that judges decide cases according to the law and facts, without regard to whether particular laws or litigants are popular or unpopular with the public, the media, government officials, or the judge's friends or family. Confidence in the judiciary is eroded if judicial decision making is perceived to be subject to inappropriate outside influences.

Official Commentary [1], Canon 2.4. In furtherance of these precepts, it is imperative that judges interpret and apply the law objectively and without regard to whether they personally

9

approve or disapprove of the law in question. Equally imperative to American concepts of justice and the rule of law is that parties respect and abide by judicial decisions.[8]

For these reasons, as well as those expressed by the majority of this Court, I agree that the Governor must select a person from the list of legally qualified persons submitted by the West Virginia Republican Executive Committee for the Ninth Senatorial District to fill the vacancy in the state senate created by Mr. Hall's resignation. Indeed, the Governor has a constitutional duty to fill such vacancies.[9] In the event the voters in the affected senatorial district disapprove of the Governor's selection, those same voters will have the opportunity during the primary and general elections held later this year to select a different person to represent their district in the State Senate. Accordingly, I respectfully concur.

---

[8]*See* Syl. Pt. 1, *United Mine Workers of Amer. v. Faerber*, 179 W.Va. 73, 365 S.E.2d 353 (1986) ("When this Court acts within its jurisdiction, its orders shall be promptly obeyed, or contempt is a proper sanction.").

[9]Any suggestion that the Senate is not bound to seat such appointee under the rubric of "judging the qualifications" of its members is misplaced. The legislature has statutorily prescribed the legal qualifications of such member. Once the Governor selects a person to fill Mr. Hall's vacancy from the list of legally qualified persons submitted by the West Virginia Republican Executive Committee for the Ninth Senatorial District, the appointment will be in compliance with the pertinent statutory requirements and this Court's opinion, after which the Senate will be bound to seat the Governor's appointee.